The appellant was convicted of murder during a robbery and was convicted of capital murder, § 13A-5-40(a)(2), Code ofAlabama (1975), and the jury recommended a sentence of life imprisonment without parole, by a vote of five for death and seven for life without parole. Following a separate sentencing hearing, the trial court sentenced the appellant to life imprisonment without parole.
 I
The appellant argues that he was prejudiced by the State's failure to reveal the identity of an informant, pursuant to the appellant's motion, as one of the prosecution's witnesses at trial was, in fact, an informant. The record reveals that the appellant filed a "Motion to Reveal Identity of Informants" prior to trial and that the trial court granted the motion. The prosecution answered that there were no informants.
One of the prosecution's witnesses at trial testified to the substance of a conversation between the appellant, Lonnie Holt, and himself, wherein the appellant commented that it would be easy for someone to go to the victim's house and put a pillow over his head while someone searched for money. The witness also testified that the appellant further stated that the victim was an old man in bad health and that he carried a large amount of money. The witness also testified that Lonnie Holt responded by saying that he would participate, but that he was afraid because the victim's and his neighbors' houses were too close together. The appellant then suggested that they could park down the street and walk to the victim's house. The State's witness also indicated that another such discussion occurred a few days later. No objections were made by the appellant to this witness's testimony on the grounds now raised.
In his motion for new trial, the appellant first objected on these grounds, and therefore the objection was untimely. The trial court granted the appellant's pre-trial motion and nothing further was brought to its attention.
 " 'Although courts have sometimes departed from this rule, generally, an analogy to the rule limiting the scope of review on appeal to questions raised below, a new trial will not be granted for matters pertaining to rulings, evidence, or occurrences at a trial, including erroneous conduct on the part of the court, counsel, or jury, unless timely and sufficient objections, requests, motions, or exceptions have been made and taken. Any grounds which might have been afforded by such matters are presumed to have been waived, except where such matters were unknown to applicant until after verdict and could not have been discovered by the exercise of reasonable diligence, and except in instances of fundamental errors which of themselves invalidate the trial.' McMullin v. State, 442 So.2d 155, 161
(Ala.Crim.App. 1983), quoting 24 C.J.S Criminal Law § 1428 (1961). See also 24 C.J.S. Criminal Law
§ 1442 (1961)."
Leverett v. State, 462 So.2d 972, 979-80 (Ala.Cr.App. 1984).
 II
The appellant argues that the trial court erred in refusing to allow him to examine each prospective juror individually on voir dire. The appellant argues that he should have been granted this right because of the pre-trial publicity and the gravity of the case. The record contains a copy of the appellant's motion requesting individual voir dire and an order setting the motion for hearing. No transcript of the hearing is included in the record; however, an order issued by the trial court indicating the court's intention to conduct voir dire examination in panels of fourteen persons, sequestered from the remainder of the venire, is included. The order further states that each panel will be instructed by the court not to discuss the voir dire questions or their answers with any other jurors. *Page 238 
The record fails to contain any of the voir dire examination or any other proof of pre-trial publicity. Because "[i]t is within the trial court's discretion as to whether the jury should be qualified in groups", Morrison v. State, 500 So.2d 36, 52
(Ala.Cr.App. 1985), affirmed, 500 So.2d 57 (Ala. 1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987), the trial court's decision to conduct voir dire in groups of fourteen was within its discretion. Id.
 III
The appellant argues that his trial attorneys were ineffective for failing to have compulsory process served on Lonnie Holt to have him called as a witness. Lonnie Holt is the individual that the appellant claimed murdered the victim. This matter was never presented to the trial court and, because the record contains no facts pertaining to this matter, there is nothing to be reviewed. Dossey v. State, 489 So.2d 662
(Ala.Cr.App. 1986); Heath v. State, 485 So.2d 1226
(Ala.Cr.App. 1986); Thomas v. State, 447 So.2d 203
(Ala.Cr.App. 1984).
 IV
The appellant argues that the admission of D.N.A. fingerprinting, or D.N.A.-print analysis, was erroneous for two reasons: the trial court failed to have a preliminary hearing to determine the scientific acceptance and reliability of D.N.A. fingerprinting, as required under Frye v. United States,293 F. 1013 (D.C. Cir. 1923); and the record allegedly fails to show that the D.N.A. fingerprinting met the admissibility test of Frye v. United States, supra.
D.N.A. (deoxyribonucleic acid) exists in the nucleus of every cell of an individual's body and is unique to the individual. The record indicates that a D.N.A.-print analysis was conducted on bloodstains found on the victim's clothing and parts of the victim's house. These bloodstains were found to match the appellant's D.N.A. The State presented the testimony of two experts concerning the tests that were performed, the procedures used, and the general acceptance of this analysis in the scientific community. When one of the State's experts was asked about the conclusions he reached after conducting the D.N.A.-print analysis on the bloodstains, defense counsel objected on the grounds that this test had not been proven as reliable in Alabama. No objection was made on the grounds that a hearing was not conducted ex mero motu. While the appellant could have asked for a hearing outside the presence of the jury, by not objecting on that ground he waived that right. Cf.Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908
(1964); Swenson v. Stidham, 409 U.S. 224, 93 S.Ct. 359,34 L.Ed.2d 431 (1972).
Although D.N.A. evidence has been admitted at trial in Alabama, the admissibility of D.N.A. testing has not yet been decided in this state. Womack v. State, 555 So.2d 299
(Ala.Cr.App. 1989); Kennedy v. State, 545 So.2d 214, 218
(Ala.Cr.App. 1989), cert. denied, 493 U.S. 900, 110 S.Ct. 258,107 L.Ed.2d 207 (1989). In the present case, the appellant objected to the admission of the D.N.A. testing, and the trial court held that it was admissible based on the evidence presented by the State.
The D.N.A.-print analysis, an identification technique, has been admitted as evidence in the courts of at least thirteen states, including Colorado, Florida, Idaho, Indiana, Kansas, Kentucky, New York, North Carolina, Ohio, Oklahoma, South Carolina, Virginia,[1] and Maryland.[2]
The test takes approximately three weeks and can be performed accurately from a single strand of hair. State Legislatures, vol. 15, no. 2 at 7 (Feb. 1989). "Chances of two people (except identical twins) having the same D.N.A. pattern are said to be between 30 billion and 100 billion to 1." Id.
 "D.N.A. identification testing is based on finding intact D.N.A. molecules in blood, semen, or body tissues and comparing the results with samples from a *Page 239 
suspect. D.N.A. has been shown to be highly resistant to many of the forces of nature and is particularly stable in dried specimens. Successful forensic D.N.A. tests have been conducted on evidentiary specimens that were more than four years old."
Sharpe, "The D.N.A. Print Identification Test: A New and Valuable Tool in the Investigation of Violent Crime", TheDetective (Spring 1989) at 5. The applications for this testing are many, including criminal investigation, the establishment of paternity, and accurate identification of international travelers, automobile drivers, bank account holders, and hospital patients. State Legislatures, supra. Because of the possible ramifications and import of this testing, a large outwash of controversy concerning its possible advantages and problems has arisen, and the possibilities have been widely discussed. See e.g. Lomhoff, "By Their D.N.A., So Shall Ye Know Them", 7 California Lawyer (Feb. 1987) at 8-9; Moss, "D.N.A. — The New Fingerprints", 74 A.B.A. Journal, (May 1988), at 66-70;Stein, "Genetic Fingerprinting: a Boom to Law Enforcement or a Rights Violation?" 11 Pennsylvania Law Journal-Reporter (May 2, 1988) at 12; Strauss, "D.N.A. Fingerprinting", 91 TechnologyReview (February/March 1988) at 8, 10; White and Greenwood, "D.N.A. Fingerprinting and the Law", 51 Modern Law Review
(March 1988) at 145-55; "D.N.A. Fingerprinting Possibilities and Pitfalls of a New Technique", 28 Jurimetrics J. 455 (1988).
The admissibility of medical and scientific expert testimony is governed in Alabama by the tests established in Frye v.United States, 293 F. 1013 (D.C. Cir. 1923). Hill v. State,507 So.2d 554, 555 (Ala.Cr.App. 1986), cert. denied, 507 So.2d 558
(1987).
 "In appropriate cases, Alabama follows the rule in Frye v. United States, 293 F. 1013 (D.C. 1923), for safeguarding 'against admission into evidence of facts gleaned from an unreliable scientific test.' Ex parte Dolvin, 391 So.2d 677 (Ala. 1980); see, Wilcutt v. State, 41 Ala. App. 25, 123 So.2d 193, cert. denied, 271 Ala. 315, 123 So.2d 203 (1960); Flurry v. State, 52 Ala. App. 64, 289 So.2d 632
(1973), cert. denied, 292 Ala. 720, 289 So.2d 644
(1974); Wynn v. State, 423 So.2d 294
(Ala.Crim.App. 1982). In order to satisfy the Frye test for general admissibility, a scientific principle or discovery, or evidence produced therefrom, 'must be sufficiently established to have gained general acceptance in the particular field in which it belongs.' Frye v. United States, supra."
Prewitt v. State, 460 So.2d 296, 301-02 (Ala.Cr.App. 1984).
D.N.A. testing was first analyzed under the Frye test in Maryland. "D.N.A. testing wins 'Frye' appeal", 2 Bench Mark, No. 3, Summer 1989. In Maryland v. Cobey, the trial court held a Frye hearing on the admissibility of D.N.A. print test results and, over objection, admitted these results. The court accepted the standard that "under Frye the test was not whether the procedure is unanimously endorsed but rather whether it is generally accepted as reliable." Cobey v. State, 559 A.2d at 392. That standard had been previously established in People v.Wesley, 140 Misc.2d 306, 533 N.Y.S.2d 643 (N.Y.Co.Ct.,1988). The court in Cobey held that "ample testimony and documentation demonstrated the acceptance and reliability of the method" and, because the appellant produced no expert testimony challenging its validity, the test and its results were allowed into evidence.
In the instant case, the proponent of the evidence was the State. The prosecution presented two experts who both explained the D.N.A. print test and analysis, including its procedures and applications. Both experts testified that the testing had been proven to be reliable. There was testimony that "blind testing" was conducted on a group of 22 and subsequently on 50 subjects by their company and that their test results were 100 percent accurate. One of the experts testified that the method of testing was published and given wide acceptance in the early 1970's and that "literally thousands of laboratories around the world used this technology." He further testified that this procedure is "cited over *Page 240 
2,400 times a year as the way to carry out the technology." The trial court held that "there has been a threshold showing which makes the results of this testing admissible as to its reliability."
 "Whether the proponent of a novel scientific test has met the burden of demonstrating its general acceptance usually falls within the trial judge's sound discretion. The scope of this discretion is broad and the trial judge's decision should be sustained 'unless it is manifestly erroneous. If the trial judge deems the scientific evidence admissible, the jury may then review the evidence and accord it whatever weight it considers merited."
Williams, "D.N.A. Fingerprinting: A Revolutionary Technique in Forensic Science and its Probable Effects on Criminal Evidentiary Law," 37 Drake L.Rev. 1, at 12-13 (1987), citingUnited States v. Williams, 443 F. Supp. 269 (S.D.N.Y. 1977);United States v. Stifel, 433 F.2d 431, 438 (6th Cir. 1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531
(1971); United States v. Brown, 557 F.2d 541, 556 (6th Cir. 1977); United States v. Green, 548 F.2d 1261, 1268 (6th Cir. 1977); Feguer v. United States, 302 F.2d 214, 242 (8th Cir.), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110
(1962).
While a novel scientific test's general acceptance and reliability are matters for the trial court's discretion, the following factors may be looked to in reaching a decision:
 "[C]ourts will consider whether other scientists have written or published articles supporting the test, and whether any trade organization has recognized the test, as factors probative of the degree of acceptance of the test. Courts also consider whether other courts have admitted the novel scientific evidence. Further, courts are often accused of conducting 'scientific nose-counting' to determine acceptability. Courts will almost always look to the statistical reliability of the test, where possible, in determining reliability. Finally, there are other factors, such as the care with which a test is performed and the experience of the tester, which are case-specific inquiries for any scientific inquiries for any scientific test, regardless of whether the test is novel or not."
37 Drake L.Rev., supra, at 13-14.
In the present case, we find that the trial court did not abuse its discretion in determining that the State had provided sufficient evidence of the D.N.A. print test's reliability and of general acceptance in the scientific community.
 V
The appellant argues that the trial court erred in allowing his written statement into evidence, on two grounds: the officer was allowed to testify from an allegedly incomplete copy of the statement rather than the original; and that the statement was taken without the appellant's attorney being present, although the officer knew that the appellant had been appointed counsel.
The appellant never objected at trial on the ground that the statement which the officer was using was an incomplete copy, and therefore this issue is waived. Schut v. State,548 So.2d 638 (Ala.Cr.App. 1989). Furthermore, the appellant has failed to cite any legal authority in support of his argument. Vinzant v.State, 462 So.2d 1037 (Ala.Cr.App. 1984).
Although the police were aware that the appellant had been appointed counsel, the record clearly indicates that the appellant made a voluntary, knowing, and intelligent waiver of counsel before giving this statement.
 "This court has previously held that where the interrogating officer knows that the accused is represented by counsel but nevertheless interviews the accused at a time when counsel is not present, willingly and by subterfuge by-passing the presence of defendant's counsel, the accused is denied his constitutional rights of counsel. Such denial is not cured by contention that the inculpatory statement was voluntary. Freeman v. State, Ala. Cr. App., 342 So.2d 435 (1977). This is to be distinguished from the situation where the accused has retained *Page 241 
counsel but voluntarily waives the presence of that counsel during questioning. Tiner v. State, 279 Ala. 126, 182 So.2d 859 (1966); Loyd v. State, 279 Ala. 447, 186 So.2d 731 (1966); Ables v. State, 53 Ala. App. 296, 299 So.2d 341, cert. denied, 292 Ala. 707, 299 So.2d 343 (1974).
 "The controlling proposition of law . . . is that the accused may voluntarily, knowingly and intelligently waive his right to have counsel present at an interrogation after counsel has been retained or appointed, the burden being on the prosecution to show that the waiver was knowingly and intelligently made. Williams v. Brewer, 509 F.2d 227 (8th Cir. 1974); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); see also Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424, decided March 23, 1977."
Thompson v. State, 347 So.2d 1371, 1375-76 (Ala.Cr.App. 1977), writ denied, 347 So.2d 1377 (Ala. 1977), cert. denied,434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978).
The State presented sufficient evidence through the testimony of the interrogating officer that the appellant was advised of his Miranda rights, including his right to have his appointed attorney present, but that the appellant advised the officer and the chief deputy that he had prepared a written statement and "wanted a deal." The appellant was told that no deal could be offered. The officer also testified that, prior to the appellant's giving his statement, no one induced the appellant in any way or made any threats or other form of coercion against him. The appellant signed a written waiver, acknowledging that he did not want a lawyer and that he understood what he was doing. The appellant then gave the interrogating officer and the chief deputy his statement. Thus, the State sufficiently proved that the appellant voluntarily, knowingly, and intelligently waived his right to counsel.
 VI
The appellant argues that there was insufficient evidence presented to support the jury's verdict. He was charged with the victim's murder during a robbery of a gold pocket watch and a wallet containing an unknown amount of currency. When the victim's body was discovered, his wallet and pocket watch were missing and the belt loop over the pocket in which he carried the watch was torn. There was testimony that the victim regularly carried large sums of money in his billfold and further testimony indicated that the appellant was aware that the victim was elderly, wealthy, and carried large sums of money. Blood found near the victim's torn belt loop, his rear billfold pocket, and the doorway to his residence was identified by D.N.A. testing as being that of the appellant. Shortly after the victim's murder, the appellant told someone that he had gotten $3,600 from a lawsuit, which court records indicated that the appellant lost, recovering nothing. In his statement the appellant admitted being at the victim's house at the time of the murder, but claimed that Lonnie Holt committed the murder and that he never intended for the victim to be killed or his property taken.
The State presented sufficient circumstantial evidence to establish a prima facie case of robbery when the victim is intentionally killed. Cumbo v. State, 368 So.2d 871
(Ala.Cr.App. 1978); cert. denied, 368 So.2d 877 (Ala. 1979);Dolvin v. State, 391 So.2d 133 (Ala. 1980). The evidence supported the jury's verdict finding the appellant guilty of the charged offense. See Hallford v. State, 548 So.2d 526,533-36 (Ala.Cr.App. 1988), affirmed, 548 So.2d 547 (Ala. 1989), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342
(1989).
 VII
The appellant argues that the trial court erred by refusing to give his requested charge which stated: "I charge you ladies and gentlemen of the jury, that if Bryce Wallace [the victim] was killed one day but robbed the next, then you cannot find that he was killed 'during a robbery.' " However, the record indicates that the only objection raised by the appellant to the trial court's failure to give this charge was defense counsel's statement: "Defendant objects *Page 242 
to the court's refusal to give charges 36, 35, 34, 33 [the instant charge], 27, 26, 25, 24, 23, 22, 21, 20, 19, 18, 15, 14, 12, 7, 6, 5, 4, 3, 39, and 50."
According to Rule 14, Alabama Temporary Rules of Criminal Procedure:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
Therefore, an appellant's objection must be specific as to the charge refused and as to the ground for the objection.Donovan v. State, 548 So.2d 1087, 1090 (Ala.Cr.App. 1989). "The appellant's general objection to the court's refusal of the numbered charges was not sufficient." Kinder v. State,515 So.2d 55, 62 (Ala.Cr.App. 1986).
AFFIRMED.
All Judges concur.
[1] State Legislatures, vol. 15, no. 2 at 7 (Feb. 1989).
[2] Cobey v. Maryland, 80 Md. App. 31, 559 A.2d 391 (1989), cert. denied 317 Md. 542, 565 A.2d 670 (1989).