[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 528 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 529 
The appellants, William Chris Hagood and Ricky Martin, were indicted for capital murder committed during the course of a robbery. They were found guilty of capital murder as charged in the indictment and were sentenced to life in prison without the possibility of parole. The state's evidence tended to show that on August 28, 1988, the body of James Lindsey was found on a county road between Decatur and Hartselle, Alabama. The victim had been stabbed three times — once in the back and twice in the chest. Death was caused by a combination of loss of blood and breathing blood into the lungs.
The evidence showed that several weeks earlier, the victim had obtained marijuana from Anthony Simmons. Simmons had known Lindsey for several years but had never previously sold him marijuana. Simmons testified at trial that Lindsey did not pay him for the marijuana he had sold him several weeks prior to his death. He further stated that he had obtained this marijuana from Hagood. Simmons made several attempts to get the money from Lindsey but was unsuccessful. On the day that he was killed, Lindsey had called Simmons to ask if Simmons could get him some more marijuana. Simmons stated that he might be able to, and he asked him if he had the money that he owed him for the marijuana he had sold him previously. Lindsey stated that he would try to get the money.
At approximately 5:00 p.m. on August 28, 1988, Simmons went to Hagood and talked with him about obtaining more marijuana for Lindsey. Ricky Martin, Hagood's brother-in-law, was with Hagood when this discussion took place. Hagood then asked Simmons about paying for the marijuana he had given him previously. Simmons offered to borrow the money, but the appellants said they would get the money out of Lindsey if they had to "whip his ass." They agreed to meet back at Simmons's house at 7:00 p.m. that same evening to talk about the "deal." After Simmons left the appellants, he called Lindsey and told him that he could probably get the marijuana he wanted and that Lindsey should call him back at about 7:00 p.m. that evening.
The appellants arrived at Simmons's house at around 7:00 p.m. that same day. Several people were at Simmons's house when the appellants arrived, so they went outside to talk about the deal. They told Simmons that they had the marijuana. Simmons called Lindsey and told him to meet them behind the Jet Mart convenience store on Highway 31 between Decatur and Hartselle. The three left Simmons's home, Simmons driving his own car and the appellant following in another vehicle. They arrived at the meeting place and parked their cars. The appellants parked on a gravel road behind the Jet Mart convenience store. Simmons then left his car to get Lindsey.
In the meantime, Lindsey had gone to visit a friend, Elbert Clements, to see if he could get the money for the marijuana. Michael Short and Renea Dalton were present when Lindsey arrived at Clements's home. Clements agreed to lend Lindsey $500.00 if Lindsey would pay him $100.00 in interest and if he was paid by the next day. Lindsey agreed to these terms.
Having obtained the money, Lindsey and Clements, who wished to protect his investment, drove to the designated area and *Page 530 
waited in front of the Jet Mart. Simmons arrived and took Lindsey to where he had left the appellants. The appellants asked Simmons whether the victim had the money he owed. Simmons replied that he did. The appellants told Simmons that the marijuana was in the trunk of the car. They opened the trunk, and Hagood began fumbling for something in the trunk. He told them that could not find the marijuana. Martin then got inside the car and said that he could not find it in the car either. Simmons walked back to his car to get a cigarette. He heard Lindsey say, "Oh, shit." When he went over to the car that the appellants were driving, he saw the victim lying face up on the ground, making gurgling noises.
The appellants then asked Simmons where the money was. Simmons got the money from the victim and gave it to Martin. Martin handed the money to Hagood. The appellants asked Simmons to help them drag the body away from the car, but he refused. Hagood gave Simmons 150.00 and told him to keep his mouth shut. Simmons, fearing for his life, took the money and went home. He told his wife what had happened.
Meanwhile, Clements was waiting for Lindsey to return to his car. When Lindsey didn't return, Clements called Michael Short, who has been with them earlier in the evening. When Short arrived, he looked for Lindsey, but could not find him. Short then left and started to drive home down a gravel road when he saw a body. It was Lindsey. Short went back to the Jet Mart parking lot where Clements has stayed and they both called the police.
Hagood testified at trial that he went with Simmons and Martin to the area behind the Jet Mart. He said that Martin worked on his car after Simmons left to get Lindsey. This was at approximately 8:30 p.m. When Simmons returned with Lindsey, Simmons and Lindsey approached Martin's car. He testified that Martin and Lindsey started arguing and that Lindsey attacked Hagood with a piece of pipe. Hagood stated that he pulled out a pocketknife and accidentally, in self-defense, stabbed Lindsey in the back and then twice in the chest. There were several inconsistencies in his testimony.
Hagood was arrested the day after the incident. In his possession were two $100 bills and three $20 bills. Martin was not located for two months. Martin was finally found, through an anonymous tip, in a trailer in Virginia Beach, Virginia. After the police entered the trailer by using a battering ram, appellant Martin said, "Who the hell told you I was here?"
The appellants raise the following issues on appeal.
 I
Hagood initially argues that the trial court erred in not allowing him to individually voir dire the prospective jurors. As this court has held on many occasions, an appellant has no constitutional right to individually voir dire prospective jurors in a capital case. Whether to allow individual voir dire is a matter left to the sound discretion of the trial court. See Whisenhant v. State, 555 So.2d 219 (Ala.Cr.App. 1988), aff'd 555 So.2d 235 (Ala. 1989); Hallford v. State,548 So.2d 526 (Ala.Cr.App. 1988), aff'd, 548 So.2d 547 (Ala. 1989), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989);Bell v. State, 475 So.2d 601 (Ala.Cr.App. 1984), aff'd,475 So.2d 609 (Ala. 1985), cert. denied, 474 U.S. 1038,106 S.Ct. 607, 88 L.Ed.2d 585 (1985).
In the instant case, the trial court did not allow an individual voir dire, but he split the prospective jurors into groups of 12 so that counsel could question them. As we recently stated in Perry v. State, 586 So.2d 236 (Ala.Cr.App. 1990):
 "Because '[i]t is within the trial court's discretion as to whether the jury should be qualified in groups,' Morrison v. State, 500 So.2d 36, 52 (Ala.Cr.App. 1985), affirmed, 500 So.2d 57
(Ala. 1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987), the trial court's decision to conduct voir dire in groups of fourteen was within its discretion."
586 So.2d at 238.
 II
Hagood next contends that the procedure for striking jurors set out in Rule *Page 531 
15.4(h), A.R.Crim.P.Temp.; violates the principle of equal protection. Specifically, he contends that his equal protection rights were violated because the appellants were tried together and each received only 9 strikes and the prosecution received 19. As Judge Tyson, speaking for this court in Sumpter v.State, 480 So.2d 608 (Ala.Cr.App. 1985), stated:
 " 'Rule 15.4(h) provides that when defendants are tried jointly, in selecting the jury, the "district attorney shall strike first, and shall strike one (1) name from the list, then one (1) defendant shall strike one (1) name from the list; then the district attorney shall strike one (1) more name from the list." The rule makes it clear that the parties shall strike in a definite order; first the State, then one defendant, then the State, then the second defendant. . . . A law changing the number of jury strikes in a criminal case is procedural and does not affect matters of substance. Haynes v. State, 424 So.2d 669, 670-72
(Ala.Cr.App. 1982), cited as proper authority in Ex parte Cofer, 440 So.2d 1121 (Ala. 1983). See also Opinion of the Justices No. 229, 342 So.2d 361, 362
(Ala. 1977), holding that the "method of selecting juries in criminal cases, . . . is within the rulemaking power of the Supreme Court of Alabama as granted by the Constitutional provision quoted (Amendment 328, Section 6.11)." ' "
480 So.2d at 612, quoting from Holsemback v. State,443 So.2d 1371, 1377 (Ala.Cr.App. 1983), cert. denied, 443 So.2d 1371
(Ala. 1984). See also Means v. State, 545 So.2d 100
(Ala.Cr.App. 1987), writ quashed, Ex parte Dorsey,545 So.2d 106 (Ala. 1989). This statute is not unconstitutional. See Wardv. State, 484 So.2d 536, 539 (Ala.Cr.App. 1985).
 III
Hagood next contends that this case should be reversed because there are 28 instances of "off the record discussions" that are not included in the transcript on appeal. Initially, we note that it is the appellant's duty to make a complete record on appeal. If the appellant wished the transcript to be corrected or supplemented he could have filed a motion pursuant to Rule 10(f), A.R.App.P. We note that a Rule 10(f) motion was filed by both appellants; however, no mention was made of any "off the record discussions."
Furthermore, it is clear after a review of the proceedings that appellant's counsel was aware that every statement was not being taken down by the court reporter. Thus, if he wanted these discussions in the record, he could have made a motion at the time that each discussion took place so that they would be included. We note that Hagood's counsel did make a motion that all proceedings be taken down by the court reporter at the beginning of the trial. At this time the trial court instructed the court reporter that the opening and closing statements be transcribed. Moreover, the appellant has made no mention of what was deleted from the record.
 IV
Appellant Hagood next contends that the trial court erred in overruling his motion for mistrial after Officer Paul Cain stated during his testimony that he was familiar with appellant Hagood because he had had him under surveillance before the offense in question. Defense counsel objected and moved for a mistrial. The trial court did not grant the mistrial motion, but he did give the following curative instruction:
 "Let me — I need to make these documents and instructions to the jury. Let me instruct you that any testimony that you have heard concerning any other investigation of Mr. Hagood or any reference to Mr. Hagood or his place being under surveillance or any reference that may have been related to another crime is not admissible. That is not evidence for you to consider. I am excluding any of that testimony and all of that testimony from you. You are to erase that from your mind and not consider it and decide this case without any reference to those — to that testimony. And I will ask you now whether or not any of you would be unable to decide this case without *Page 532 
considering that testimony that I have just referred to. Would any of you be unable to set that aside and put it out of your mind — would you be unable to decide this case without considering that? And if you would be unable to do that, I would like you to raise your hand at this time.
"(No response.)"
Initially we observe that, "the granting of mistrial is an extreme measure and should be exercised only when manifestly necessary or when the ends of justice would otherwise be defeated." Free v. State, 495 So.2d 1147, 1157 (Ala.Cr.App. 1986).
Moreover, as this court has stated, " 'There is a prima facie presumption against error where the trial court immediately charges the jury to disregard the improper remarks or answers.' " St. John v. State, 523 So.2d 521, 524 (Ala.Cr.App. 1987), quoting Wadsworth v. State, 439 So.2d 790 (Ala.Cr.App. 1983), cert. denied, 466 U.S. 930, 104 S.Ct. 1716, 80 L.Ed.2d 188
(1984); Kelley v. State, 405 So.2d 728 (Ala.Cr.App.), cert. denied, 405 So.2d 731 (Ala. 1981); Chambers v. State,382 So.2d 632 (Ala. 1980), writ denied 382 So.2d 636 (Ala. 1980). "The prejudicial effect of the comment was, therefore, cured and appellant's motion for a mistrial was correctly denied." Gracev. State, 431 So.2d 1331, 1335 (Ala.Cr.App. 1982). See alsoScott v. State, 473 So.2d 1167 (Ala.Cr.App. 1985).
 V
Hagood further contends that the trial court erred in receiving into evidence several knives which were found at appellant Hagood's home. He stated that there is no testimony that one of the knives was the murder weapon. The knives were the subject of a motion in limine. However, at the time that the knives were received into evidence, no objection was made. As our Supreme Court stated in Phillips v. State, 527 So.2d 157
(Ala.Cr.App. 1988):
 "It is the law 'that an appellant who suffers an adverse ruling on a motion to exclude evidence (or other matters, e.g., argument of counsel), made in limine, preserves this adverse ruling for post-judgment and appellant review only if he objects to the introduction of the proffered evidence or other matters and assigns specific grounds therefor at the time of trial, unless he has obtained express acquiescence of the trial judge that such subsequent objection to evidence proffered at trial and assignment of grounds therefor are not necessary. See C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala.L.Rev. 1 (1981).' "
527 So.2d at 156. See also Parks v. State, 587 So.2d 1012 (Ala. 1991); Lee v. State, 562 So.2d 657 (Ala.Cr.App. 1989).
Moreover, in the present case, when the trial court ruled on appellant's motion to exclude the knives, the trial court specifically stated, "I am going to overrule. I'll allow them unless I hear something between now and the time they are offered," indicating that this was not the last occasion that the trial court expected to hear arguments on this issue. Appellant's counsel failed to preserve this issue because no objection was made when the knives were actually received into evidence.
 VI
Hagood next contends that the trial court abused its discretion in denying his motion for mistrial on the basis of illegal communications between an officer who testified at trial and one of the jurors. Hagood alleges that one of the state's witnesses talked to several jurors prior to the appellant's testimony. The evidence on point is conflicting. The evidence showed that at the hearing on the motion, Lisa Brenner, a paralegal who worked for Martin's trial counsel, stated that she thought she saw one of the officers who testified at trial talking to a group of jurors outside the restroom on the third day of trial. She stated that he appeared to be close to a group of jurors. Martin stated during this hearing that the officer had told him that he had talked with the jurors. The officer was questioned concerning this statement and stated that he had talked with no jurors except the alternate juror and that *Page 533 
was after the alternate had been discharged from the case. He stated that the district attorney and one of Martin's attorney's were present when this conversation with the dismissed alternate juror took place. The bailiff in charge of the jury testified that he saw no one approach the jurors during the course of the trial and that he did not see the officer at any time talking with any of the jurors. One of the jurors who the officer had allegedly talked with was a juror who was excused due to a migraine headache. As this court stated in Cox v. State, 394 So.2d 103 (Ala.Cr.App. 1981):
 "Whether there has been a communication with a juror and whether it has caused prejudice are questions of fact to be determined by the trial court in the exercise of sound discretion. Gaffney v. State, Ala.Cr.App., 342 So.2d 403, cert. denied, Ala., 342 So.2d 404 (1976). This ruling will not be disturbed in the absence of a showing of abuse of discretion."
394 So.2d at 106.
We must examine the facts of the particular case. SeeWeeks v. State, 456 So.2d 395 (Ala.Cr.App. 1983), aff'd,456 So.2d 404 (Ala. 1984), cert. denied, 471 U.S. 1030,105 S.Ct. 2051, 85 L.Ed.2d 324 (1985). In the instant case, the facts support the ruling of the trial court. There is no evidence that there was an abuse of discretion here.
 VII
Hagood next argues that the trial court erred in refusing to give four of his requested jury instructions. The following occurred after the court's oral charge:
 "Mr. Madison [Hagood's Counsel] — Judge, we would take exception first to the Court's oral charge as to self-defense. I think the Court properly laid out the elements of self-defense but did not tell the jury that in the event you find self-defense your verdict must be not guilty.
". . . .
 "Mr. Madison — Judge, we would except to the Court's failing to give defendant Hagood's requested written jury instruction number two, three, four, six, nine — I'm sorry, nine was given. I withdraw that as to nine. Eleven, twelve, thirteen, fourteen, fifteen, sixteen and seventeen and eighteen on the grounds they were not adequately covered in the Court's oral instructions."
The trial court then reinstructed the jury on self-defense. We agree with the state that Hagood did not preserve the trial court's failure to instruct the jury on requested instructions three, four, six and twelve. As the Alabama Rules of Criminal Procedure (Temporary) state:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
Rule 14, A.R.Crim.P.Temp. (Emphasis added.)
It is the appellant's burden to ". . . advise the trial judge of his objections to the jury charge, stating his grounds, before the jury retires." Cox v. State, 500 So.2d 1296, 1299
(Ala.Cr.App. 1986). "The objection must be specific enough to point out the alleged error so as to allow the judge to correct the error." Biddie v. State, 516 So.2d 846 (Ala.Cr.App. 1987). The objection "we except" is not sufficient to put the trial court on notice of the claimed error. See Johnson v. State,552 So.2d 883 (Ala.Cr.App. 1989). "The reference to 'all of' his written charges as 'correct statements of the law' is simply not a specific ground of objection. . . ." Connolly v. State,539 So.2d 436, 438 (Ala.Cr.App. 1988).
 VIII
Hagood further argues that the trial court erred in not granting his motion for mistrial when the prosecutor referred in his opening remarks to the expected testimony of a witness which was different than the statements furnished to defense counsel prior to trial. Specifically, he contends *Page 534 
that the state violated Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in not disclosing this information to the defense prior to trial. The statement made by the witness to the prosecutor was that he had bought drugs on consignment from Hagood and owed him money. Hagood contends that this information was exculpatory since it conflicted with prior statements made by the witness.
The record reflects that the prosecutor had talked with the witness after court recessed on the first day of trial, and at that time the witness told him about his drug activity with Hagood. The prosecutor stated that he had told defense counsel about the witness's statement the morning after he had received the statement. No error occurred here. See Curry v. State,502 So.2d 836 (Ala.Cr.App. 1986). Furthermore, the prosecution had supplied the defense with all statements made by the witness prior to this revelation and all the names of the witnesses that were being called at trial. As the prosecution stated, defense counsel had complete access to all the witnesses.
Hagood also contends that the state failed to disclose that two of the prosecution's witnesses had changed their stories about the time frame involved in the offense. The district attorney stated that he had just learned about this information the night before and that he had revealed the information to defense counsel that morning.
 "Our Supreme Court stated in Ex parte Dickerson, 517 So.2d 628 (Ala. 1987):
 " 'In order to establish a Brady violation, the defendant must establish the following elements: 1. that the prosecution suppressed the evidence; 2. that the evidence was of a character favorable to the defense; and 3. that the evidence was material. Kennedy v. State, 472 So.2d 1106 (Ala. 1985).' "
King v. State, 574 So.2d 921, 928 (Ala.Cr.App. 1990), quotingDickerson, 517 So.2d at 630.
It is clear that in the instant case, assuming that the information was exculpatory, Hagood has failed to meet theBrady requirements. "The appellants have failed to show how they were harmed by the delayed disclosure of the information."Shearer v. State, 579 So.2d 692 (Ala.Cr.App. 1991). We also note that defense counsel made no request for a continuance.
 IX
Hagood lastly argues that the trial court erred in allowing Pernell Wiggins to testify at trial for several reasons. Hagood argues that since Wiggins was placed in a cell to elicit a statement from Hagood, any statement he made to Wiggins should not be admitted since he was not informed of his Fifth and Sixth Amendment rights prior to making the statement. We note that the only objection made at trial was that Hagood did not voluntarily waive his Fifth Amendment right against self-incrimination.
Pernell Wiggins, a jail-mate of Hagood's, stated that Hagood made several statements to other inmates which he overheard while they were both in a holding cell waiting to see a doctor on August 31, 1988. Wiggins said that after the appellant stated talking he joined the discussion and discovered why Hagood had been arrested. Wiggins testified that Hagood had said at that time, "The motherfucker thought he was a bad ass," and "The deal went bad." Hagood further stated that when they were swapping the money for the drugs, Hagood attacked Lindsey with a knife and Lindsey picked up a pipe and swung at him and knocked the knife from his hand. Hagood grabbed Lindsey and held him while Martin struck Lindsey with a knife. The appellants then put something in the trunk and left the scene. Hagood also stated at that time that the knife he used was from the collection of knives taken from his residence.
Wiggins also testified that he was offered no reward to elicit any statement from Hagood. He had sent a letter to Officer Goodwin, who was investigating the case, after he was in the holding cell *Page 535 
with Hagood and Hagood had made the above statements. He testified that after the letter was sent Goodwin asked him to wear a wire and go back into a cell with Hagood. Goodwin stated that he had no contact with Wiggins prior to his receiving the letter. It was after he received the letter that he asked Wiggins to wear a wire. The tape of this later conversation between Wiggins and Hagood was inaudible. Wiggins stated on five or six occasions during his testimony that the statements he testified that Hagood made were made while they were both in a holding cell waiting to see a doctor, which was prior to the writing of the letter to Officer Goodwin. The letter was received into evidence at trial.
The record supports the decision of the trial court that no agency relationship existed when Wiggins was first placed in the cell with Hagood. The trial court's findings in this regard are presumed correct. See Kuhlmann v. Wilson, 477 U.S. 436,106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). After a review of the record, it appears that only the conversation which occurred prior to Wiggins writing the letter to Goodwin was brought out during Wiggins's testimony. As the district attorney stated prior to Wiggins's testimony, "If it will help you, I don't plan to offer anything after he was wired."
" 'According to Terry v. State, 397 So.2d 217 (Ala.Cr.App. 1981), Miranda warnings are not required in instances where inculpatory or otherwise admissible statements are made to persons who are not law enforcement officers or their agents.' " Connolly v. State, 500 So.2d 57, 61 (Ala.Cr.App. 1985), aff'd, 500 So.2d 68 (Ala. 1986). Furthermore, see Illinois v.Perkins, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). (Undercover law enforcement officer posing as inmate need not give the Miranda warnings to an incarcerated suspect before asking questions that may elicit an incriminating response regarding an not yet charged crime).
The trial court correctly allowed Wiggins to testify concerning his first conversation with Hagood. It appears from the record that the substance of the first conversation was the only testimony elicited from Wiggins. Thus, we believe no error occurred here.
Even if Wiggins had testified regarding the second conversation, that testimony would not be rendered inadmissible by the fact that he did not waive his right to counsel. As this court stated in McCall v. State, 501 So.2d 496 (Ala.Cr.App. 1986), whether the inmate, to whom the statement was made, was an agent would not affect the admissibility of the statement under the Sixth Amendment since his right to counsel had not yet attached because the appellant had not been indicted. SeeMcCall, 501 So.2d at 500.
Hagood also contends that the trial court erred in allowing the prosecution to ask Wiggins leading questions. Whether to allow such questions is left to the sound discretion of the trial court. See § 12-21-138, Code of Alabama 1975. Furthermore, it appears that it was Martin's counsel and not Hagood's counsel who objected to the use of leading questions by the prosecutor.
Hagood further argues, concerning Wiggins's testimony, that the trial court erred in allowing the witness's memory to be refreshed when the witness did not state that his memory needed refreshing. In the instant case, the witness's memory was refreshed by looking at the letter he wrote to Officer Goodwin. The trial court committed no error in allowing this. "A witness may refer to a writing for the purpose of refreshing his recollection without first, as a condition precedent, having shown that it is necessary for his recollection to be refreshed." C. Gamble, McElroy's Alabama Evidence § 116.02(6) (3d ed. 1977). The appellant argues several other issues concerning the refreshing of the witness's testimony. However, the only objection made at trial was that the witness's testimony could not be refreshed unless the witness first stated that his memory needed refreshing. All grounds of objections not stated at trial are waived and therefore are not preserved for purposes *Page 536 
of appeal. See Owes v. State, 512 So.2d 797 (Ala.Cr.App. 1987).
Hagood also contends that the trial court erred in not allowing Wiggins to identify the officers he had worked with in the past on other cases. Wiggins had testified that he had on two prior occasions helped the North Alabama Drug Unit make a couple of drug buys. The only question that the court did not allow defense counsel to ask was what were the names of the officers. The witness had already testified that he did not know Officer Goodwin prior to the instant occasion. We do not see how this prejudiced Hagood in any way. No error occurred which "injuriously affected substantial rights" of Hagood. See Rule 45, A.R.App.P.
 X
Martin initially argues that there was insufficient evidence to find him guilty of capital murder because the only evidence was the testimony of his accomplices, Simmons and Hagood, and one can not be convicted on the uncorroborated testimony of an accomplice. For the following reasons, we do not agree.
As § 12-21-222, Code of Alabama 1975, provides: "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence. . . ." As Judge Bowen recently stated:
 " 'Except where the state's evidence undisputedly makes the witness an accomplice, the defendant has the burden of showing the witness's complicity.' Jacks v. State, 364 So.2d 397, 403 (Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala. 1978). 'Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. Where there is a doubt or dispute concerning the complicity of a witness and the testimony is susceptible to different inferences on that point, the question is for the jury.' Ex parte Bell, 475 So.2d 609, 611-12 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985). 'For the corroboration requirement of [Ala. Code 1975, § 12-22-222] to apply, however, "it must clearly appear that the witness in question is an accomplice." ' Ex parte Bates, 461 So.2d 5, 6 (Ala. 1984)."
Connolly v. State, [Ms. 1 Div. 90, November 30, 1990] 1990 WL 237219 * pp. 7, 8 (Ala.Cr.App. 1990).
As our Supreme Court stated in Ex parte Bell, 475 So.2d 609
(Ala. 1985), cert. denied 474 U.S. 1038, 106 S.Ct. 607,88 L.Ed.2d 585 (1985): "Where there is a doubt or dispute concerning the complicity of a witness and the testimony is susceptible to different inferences on that point, the question is for the jury." Bell, 475 So.2d at 611-12. "A 'participant' in a crime is not synonymous with an accomplice." Bell,475 So.2d at 613.
In the instant case, there is no question that Hagood and Martin were accomplices. However, the trial court submitted the issue as to whether Simmons was an accomplice to the jury for its determination. The testimony clearly established that the trial court was correct in submitting this issue to the jury. Simmons refused to help them drag the body and did not participate in the murder of the victim. Simmons testimony at the preliminary hearing was also admitted. Simmons stated at this hearing that he thought that he was taking Lindsey to buy some marijuana. He did know that the marijuana sale was a ruse. We believe that all this information made the question of whether Simmons was an accomplice a question of fact for the jury's determination.
 "The evidence must be undisputed that the witness was an accomplice in order to mandate the corroboration of an accomplice's testimony under § 12-21-222, Code of Alabama (1975). (citation omitted). ' "The burden of proving a witness is an accomplice for the purposes of invoking the rule of § 12-21-222 is on the defendant." (citation omitted).' "
Miller v. State, 518 So.2d 801, 807 (Ala.Cr.App. 1987). No error occurred here.
 XI
Martin next contends that the trial court erred in failing to give his requested *Page 537 
charges one, four, and five. Martin's trial counsel stated the following at the end of the trial court's charge to the jury:
 "We take exceptions to the Court's refusal to grant defendant's requested charges — defendant Martin's requested charges 1 through 16, inclusive. And on the grounds that they are correct propositions and statements of the law, and they were not adequately covered in the Court's oral charges."
No other mention was made of the failure of the trial court to give requested jury instructions one, four, and five. The objection made was not specific enough to put the trial court on notice of its alleged error in failing to give the instructions. See Connolly, supra; Rule 14, A.R.Crim.P.Temp.
Martin also argues that under the plain error doctrine we should reverse on this issue. As Rule 45A, A.R.App.P., states: "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect. . . ." Since this is not a case in which the appellants were sentenced to death, we are not compelled to search the record for plain error.
 XII
Martin lastly argues that there was no evidence that he had the prerequisite intent to kill necessary to find him guilty of capital murder since he was not the triggerman. To be convicted of capital murder, an individual must have a particularized intent to kill. See Bankhead v. State, 585 So.2d 97
(Ala.Cr.App. 1989), aff'd, 585 So.2d 112 (Ala. 1991). To be found guilty, Martin in this case must have had some intent to aid in the murder of Lindsey.
 " ' "Aid and abet 'comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary.' " Jones v. State, 174 Ala. 53, 57, 57 So. 31 (1911), quoted in Radke v. State, 292 Ala. 290, 292, 293 So.2d 314 (1974). If the jury is convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, the fact that the defendant is an aider and abettor is established. Jones, supra; Raiford v. State, 59 Ala. 106, 108 (1877). "The culpable participation of the accomplice need not be proved by positive testimony, and indeed rarely is so proved. Fuller v. State, 43 Ala. App. 632, 198 So.2d 625 [1966]. Rather, the jury must examine the conduct of the parties and the testimony as to the surrounding circumstances to determine its existence." ' " (Citations omitted.)
Watkins v. State, 495 So.2d 92, 102 (Ala.Cr.App. 1986), quoting from Gwin v. State, 456 So.2d 845, 851 (Ala.Cr.App. 1984).
We believe that the evidence presented a question which was correctly submitted to the jury for its determination. The trial court thoroughly instructed the jury on the issue of intent. Secondly, there was evidence from which the jury could conclude that appellant Martin had the prerequisite intent. SeeBankhead, citing Kennedy v. State, 472 So.2d 1092
(Ala.Cr.App.), aff'd, 472 So.2d 1106 (Ala. 1984), cert. denied,474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). No error occurred here. We see no reason to disturb the decision of the jury.
For the foregoing reasons this case is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.