The appellant was convicted of capital murder, in violation of § 13A-5-40(a)(2), Code of Alabama 1975, as charged in the indictment. The appellant was sentenced to life imprisonment without the possibility of parole.
On October 9, 1990, the victim, Jeanette Little, was found dead in the bedroom of her Decatur, Alabama, home. She had suffered multiple stab wounds on various parts of her body. It was determined that the victim's death had occurred between October 5 and October 7, 1990.
At trial, the state's evidence revealed that the victim had become acquainted with the appellant while both the victim and the appellant were incarcerated in the Decatur jail. Following the victim's release from jail, the appellant and another prisoner, Brad Ward, were overheard in the jail talking about the victim. The appellant and Ward mentioned that they were going to see the victim when they got out of jail. Additionally, they were overheard to say that the victim had money and jewelry and that she was unmarried.
Following their release from jail, the appellant and Brad Ward were seen together in Ward's automobile on October 5, 1990. Around 10:25 p.m. on that day, two cars were seen leaving the area of the victim's home. One of the cars was similar to the victim's, while the other car was similar to Ward's car. A witness testifying for the state stated that both cars were proceeding recklessly.
At approximately 5:48 a.m. on October 6, 1990, the appellant and Ward called for a cab to pick them up at the appellant's apartment. The cab picked the appellant and Ward up around 6:00 a.m., and the driver was instructed to drive to Stonegate apartments. During the cab ride to Stonegate, the appellant attempted to sell the cab driver two lady's rings. When the appellant and Ward left the cab at Stonegate, Ward gave the cab driver one of the rings because they had no money for the cab fare. Later on October 6, the appellant and Ward met a couple at the Brass Rail, a Decatur nightclub, and sold them a ring. It was later determined that these rings had belonged to the victim.
The evidence at trial showed further that the victim was last seen at Mayes Grocery store around 8:30 or 9:00 p.m. on October 5, 1990. She was seen meeting a long-haired man outside the store. The victim left the store in her car with this man. The man had parked his car in a parking area in front of a florist shop near the grocery. Later on the same evening, the victim's car was seen parked in the parking area in front of the florist shop, where the man's car had been parked earlier. The victim's car remained there until it was removed by law enforcement officers. A hair, consistent with the appellant's hair, with blood on *Page 385 
it was found in the victim's car. The trial evidence showed that the appellant had long hair at the time of this incident.
Following the discovery of the victim's body, law enforcement investigators discovered a steak knife in the victim's kitchen that had blood on it. Furthermore, a mark was discovered on one of the victim's fingers that indicated that she had worn a ring on that finger.
 I
The appellant contends that the trial court erred in denying his motion for a new trial on the ground that a juror failed to properly respond to a question on voir dire. The appellant argues that this failure prejudiced him. The appellant's claim stems from the following questioning, which occurred during voir dire:
 "MR. LAVENDER [appellant's counsel]: There will probably be some testimony that my client is an abuser of alcohol and drugs, particularly crack cocaine and things of that nature. Would that make any of you any more inclined to vote for death or even conviction for that matter, because you know he's an abuser of alcohol and drugs?
"(No response.)
 "MR. LAVENDER: Do any of you, and I don't mean to embarrass you, but does any of you or any of your family have any what we call problems, problems with alcohol or drugs. I'm talking about not where [they] drank, but where they're dependent on them, alcohol or drug addict?" (R. 203-204.)
While several jurors did respond to this line of questioning, juror M. did not respond.
Later, the appellant's counsel moved for a mistrial and stated that he had received an anonymous telephone call telling him that one of the jurors on the venire had failed to respond to questioning during voir dire pertaining to alcohol and drug problems. The following took place in the hearing on the appellant's motion for a mistrial:
 "MR. TWEEDY [appellant's counsel]: We have another motion for a mistrial on the basis that someone contacted my office yesterday and indicated that they had personal knowledge that one of the jurors within the last six months had been in a mental hospital. I believe that the questions on voir dire examination by both the state and the prosecution and the court asked each juror and all the jurors whether or not there was anything that they knew of that would render them incapable of sitting on this jury. That being the case with the particular information, of course, we don't know which juror it is and we don't know whether for sure it's true or not, but on that basis, we'd move for a mistrial.
 "THE COURT: And, you don't know — I take it that you had an anonymous caller that calls in and says that is the state of affairs, the situation with a particular member of this jury.
 "MR. TWEEDY: They would not leave their name or their number.
 "THE COURT: The question had been asked, of course, by the court of the initial qualification of the venire as to whether or not anyone has any type of mental impairment or physical infirmity that would make them unfit or unable to serve on a jury and there was no response, obviously.
 "Further, as this panel has sat, as this jury had been impaneled and been sequestered just from the state of affairs, my observation, counsel's observation, I have not detected any obvious indication that any member of the jury is apparently impaired to any extent. They have been sequestered.
 "I have had no indication of any problems whatsoever of abnormal behavior from the bailiffs as they are with them at all times, the matron and Mr. Wyle, the court's bailiff. And I'm not aware of any and I take it to be, you know, an anonymous caller — and I don't think at this point in time there's any way or any appropriate way to handle it — it may cause more problems or not of this jury to go into some type of inquiry.
 "I see nothing that would indicate to me by the responses given by members of the jury and from the conduct throughout the week and from those who *Page 386 
have observed them, that there is anything out of the normal standard conduct. Is there anything further on that?
 "MR. TWEEDY: Are you denying the motion for a mistrial at this time?
 "THE COURT: I'm asking if there's anything further on it before I rule.
"MR. TWEEDY: Oh, we have nothing further.
"THE COURT: The motion will be denied.
 "MR. TWEEDY: Well, in that case, we'd asked that you inquire further to the jury and ask more questions about whether or not this is true. If it is true, we feel like due process and basic fairness would require the court to make some sort of inquiry and to find out whether or not if the case is true. If it is true, we'd like to be heard on what we'd like the court to do.
 "THE COURT: Let me make sure I understand. You have an anonymous phone call?
"MR. TWEEDY: I'll show the court what I've got.
 "THE COURT: You have not talked to anybody about this but you have received an anonymous message by someone who would not give their name about someone — not that they are mentally ill, not that they are unfit to serve, not that they have exhibited improper conduct or whatever, but they have been in, as classified, a mental hospital within the last six months?
"MR. TWEEDY: That is correct.
 "THE COURT: All right, gentlemen, if you would approach the bench, please.
 "MR. OSBORN [prosecutor]: Judge, even assuming that that [anonymous message] is true, it does not indicate that assuming there was a particular juror that was in a mental hospital six months ago, it does not indicate their current state or condition nor their current qualifications to serve.
 "MR. LAVENDER: Judge, there's one thing that could be overlooked. A lot of the mental hospitals have alcohol and drug treatment facilities associated with it. We specifically asked if anybody even had any problems or [an addiction] to drugs or alcohol and all of them answered in the negative. Now, if it turns out that [that's] the case and I assure you we're going to do some inquiring about it — improper answers — to see if we can't find who said that — if one of them has incorrectly responded to our questions I think we'll be entitled to a new trial particularly on that issue and the facts in this case as they are.
 "If the court overrules our motion we'll ask that somehow, some way inquire as to whether or not there's any truth to it. If it wasn't a capital murder case, judge, I doubt if I'd even bring it to the court's attention, but my client is on trial for his life. And I hate to — you know, whether it's anonymous or not. If we had an anonymous bomb threat I'm sure we'd clear the courthouse. And that's kind of the way I feel about this and I'm aware that it puts the court in a very uneasy and very untenable position but I don't know what else to do about it.
 "THE COURT: Of course, the other side of the coin is should there be — for the sake of argument, should there be a problem, that they would at least have the opportunity to cure the problem at this point in time when I have two alternates.
 "MR. LAVENDER: Judge, I don't think it's a problem. If it's not true, won't be a problem for the court to inquire and say we've had a — tell them what the report is and if all of them respond negatively, then there's no problem and if there is, in fact, there is somebody on there then I guess you're on your own then, but if it's not true, I don't think it's going to cause anybody any problems.
 "THE COURT: All right, is there anything further from the state?
 "MR. OSBORN: Judge, I don't — Judge, it's still our position that even assuming that it is true, it doesn't indicate the current condition of the jury, even assuming that this anonymous tip is true. Of course, we really don't have a position on it. *Page 387 
 "THE COURT: There's also the other question that asking the question, assuming that I put that question to the jury and I get a response of any type from an individual, then the next question is what effect that would have upon that juror being able to serve even if there's no truth to it, being able to serve, and function on that jury.
 "All right, let me see counsel in chambers just a moment and then I'll bring the jury out and be ready to give them the charge on this.
". . . .
 "THE COURT: And, as to the other request to inquire of this jury as to anyone being in a mental hospital or having any type of mental impairment that would affect their ability to serve, I'm going to deny that. I covered that in the qualifications of the jury and I will deny that motion." (R. 1207-1213.)
In the appellant's motion for a new trial, he alleges that a juror answered falsely during voir dire examination and that this was prejudicial to him. Prior to the hearing on the appellant's motion for a new trial, the appellant moved the court to order the production of treatment records of juror M. while M. was allegedly a patient at Charter Retreat Hospital. The court ordered that the records be produced. At the hearing on the appellant's motion for a new trial, juror M. responded to the appellant's allegations that he had answered falsely when he failed to state that he had been treated for chemical dependency and conceded that he had failed to respond to the appellant's question during voir dire regarding whether anyone had problems with drugs or alcohol. Juror M. also conceded that he had admitted himself into Charter Retreat Hospital. However, juror M. testified that he had not been treated for drug or alcohol addiction. Juror M. indicated that he did not really know what he was treated for while he was a patient at the hospital, but that he was not under the effect of drugs or alcohol. Juror M. testified that although the records of Charter Retreat Hospital mention drug and alcohol abuse, he was not treated for chemical dependency and that he had no problems with drugs or alcohol.
Following this hearing, the trial court denied the appellant's motion for a new trial. The court found that there was no probable prejudice to the appellant and that the appellant failed to show any willfulness on the part of juror M. in failing to answer the question put to him as a member of the venire.
This court has recently held that:
 " 'Although the defendant has a right to have questions answered truthfully on voir dire examination of the venire, the failure of a juror to make a proper response to a question regarding his qualifications to serve as a juror does not automatically entitle the defendant to a new trial. The proper inquiry is whether the defendant's rights were prejudiced by the juror's failure to properly and correctly respond.' "
Limbaugh v. State, 581 So.2d 5, 8 (Ala.Crim.App. 1991). Furthermore, the Supreme Court of Alabama has determined that whether a party is prejudiced by the failure of a juror to answer on voir dire is "a matter primarily within the discretion of the trial court. In the absence of a showing of an abuse of discretion, the ruling of the trial court thereon will not be reversed." Land Associates, Inc. v. Simmons,562 So.2d 140, 148 (Ala. 1989), cert. denied, General American LifeIns. Co. v. Simmons, 499 U.S. 918, 111 S.Ct. 1305,113 L.Ed.2d 240 (Ala. 1991). Based upon our review of the record, we find no prejudice to the appellant and we conclude that the trial court did not abuse its discretion in denying the appellant's motion for new trial as to this issue.
 II
The appellant contends that there was insufficient evidence to sustain his conviction for murder. This contention is without merit.
The state's case depended entirely upon circumstantial evidence and, based on the evidence outlined above, we find that "the state presented sufficient circumstantial evidence from which a jury could reasonably *Page 388 
find that the evidence excluded every other reasonable hypothesis but that of guilt." Perkins v. State, 580 So.2d 4, 6
(Ala.Crim.App. 1990).
 III
The appellant contends that the trial court erred when the state was permitted to cross-examine a defense witness about a telephone call that the witness, Janice Wynn, allegedly had with the victim on the morning of October 6, 1990. Furthermore, the appellant contends that the trial court erred in permitting the state to call a witness to rebut Wynn's testimony.
At trial, the appellant called Janice Wynn as a witness. Wynn testified that she had been a friend of the victim's and that she had received a telephone call from the victim at 6:04 a.m. on October 6, 1990. Wynn testified that, on September 29, 1990, she and her sister-in-law, an antique dealer, had intended to look at some bedroom furniture the victim had. Wynn's sister-in-law's plans changed and they were unable to look at the furniture at the appointed time. Wynn called the victim to tell her of their change in plans. Wynn claimed that the next Saturday, October 6, 1990, the victim called her at 6:04 a.m.
On cross-examination, the state elicited responses from Wynn regarding the content of the victim's October 6 call to Wynn, for the purposes of testing Wynn's recollection as to the telephone call. (R. 1026.) Wynn testified, over the appellant's objections, that the victim called to find out whether Wynn's sister-in-law was coming to look at the bedroom furniture. Again, over the appellant's objection, Wynn testified that the victim explained that she was up early on Saturday morning getting ready to meet a cousin for breakfast.
Later, the state called Nadine Scott, a cousin of the victim, to testify. (R. 1062) The appellant objected and stated that the state was attempting to impeach the testimony of Janice Wynn regarding the telephone conversation. The appellant argued that Wynn had not been asked any questions regarding the content of the telephone conversation. Rather, it was the state, over the appellant's objections, that elicited that testimony. The appellant claims that it was improper to permit the state to try to disprove the content of the victim's telephone conversation because, he argues, statements of the deceased were not competent evidence in this case. The state argued, and the trial court agreed, that the state was merely testing the credibility of that witness and the recollection of the witness.
Recently, this court held:
 " 'It is always competent on cross-examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony.' Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 612, 64 So.2d 594, 598 (1953). It is a well-established rule in this state that the latitude and extent of cross-examination are matters which of necessity rest largely within the sound discretion of the trial court, and rulings with respect thereto will not be revised on appeal except in extreme cases of abuse. State v. Howington, 268 Ala. 574, 109 So.2d 676 (1959); Housing Authority of City of Decatur v. Decatur Land Co.; Holland v. State, 424 So.2d 1387 (Ala.Cr.App. 1982), cert. denied, 424 So.2d 1387 (Ala. 1983). It has been held that the cross-examination of a witness may even pertain to irrelevant and immaterial matters as bearing on the memory, accuracy, credibility, interest, or sincerity of the witness. State v. Howington; Nelson v. Johnson, 264 Ala. 422, 88 So.2d 358
(1956); Housing Authority of City of Decatur v. Decatur Land Co.; C. Gamble, McElroy's Alabama Evidence § 136.01 (3d ed. 1977)."
Beavers v. State, 565 So.2d 688, 689 (Ala.Crim.App. 1990). Furthermore, this court determined, in Twilley v. State,472 So.2d 1130 (Ala.Crim.App. 1985), that "[t]he defense, by initially putting this matter into evidence, opened the door for the State to rebut such evidence if it could." Twilley, at 1138. *Page 389 
In this case, it is clear that the appellant opened the door by first introducing testimony regarding a telephone call from the victim to Janice Wynn. This testimony was an attempt to refute the state's contention that the victim was killed on October 5, 1990. Clearly, the state had the right to cross-examine Wynn regarding her recollection and to attempt to impeach her credibility. It was also proper for the state to impeach Wynn's testimony by calling Nadine Scott, the victim's cousin, as a witness. The trial court was not in error in overruling the appellant's objections and permitting the state's cross-examination of Janice Wynn and the testimony of Nadine Scott.
 IV
The appellant contends that the trial court erred in refusing to give his requested jury charges nos. 1, 2, 3, 4, 5, 6, and 14. Specifically, the appellant argues that these charges were correct statements of the law and that the substance of the charges was not covered in the court's oral charge. This issue, however, was not preserved for review on appeal.
Following the court's oral charge to the jury and after the court had reinstructed the jury at the appellant's request on intentional murder, the appellant's counsel objected to the trial court's failure to give his requested jury charges nos. 1, 2, 3, 4, 5, 6, and 14. In his exception to the court's failure to give each of these, the appellant's counsel stated, "[i]t's a correct statement of law. It's properly hypothecated and not adequately covered in the Court's Oral Charge." (R. 1269-71.)
Rule 21.2, A.R.Cr.P., provides:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
Furthermore, in Hagood v. State, 588 So.2d 526
(Ala.Crim.App. 1991), cert. denied, Martin v. State, ___ U.S. ___,112 S.Ct. 1943, 118 L.Ed.2d 548 (Ala. 1992), where the defendant's trial counsel excepted to the trial court's failure to give certain requested charges, the defendant's counsel stated that he objected on the grounds that "[the requested jury charges] are correct propositions and statements of the law, and they were not adequately covered in the Court's oral charges." This court held that the charges were not specific enough and, thus, the issue was not preserved for review. Hagood, at 537. We conclude that the appellant's charges were not specific enough and find that the issue therefore has not been preserved.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.