This is a death penalty case. The jury found Weeks guilty of an intentional killing during the course of a robbery, in violation of § 13A-5-40 (a)(2), Code of Alabama. Weeks waived the participation of the jury in the sentencing hearing and demanded that the judge sentence him to death, a request to which the judge ultimately acceded. The Court of Criminal Appeals, 456 So.2d 395, affirmed and we granted certiorari because the death penalty was imposed. A.R.A.P. 39 (c).
The deceased, a veterinary student at Tuskegee Institute, was first reported missing after he failed to appear at school on October 1, 1981. A witness testified that he had seen Weeks near the deceased's home on the morning of October 1. The witness noticed Weeks because he had never seen him before in the neighborhood. On October 6, the Alabama Bureau of Investigation received information that the deceased's automobile had been recovered in East Cleveland, Ohio. The previous day a police officer in East Cleveland had stopped an automobile, subsequently determined to be the deceased's, for making an illegal left turn. The car was being driven by Weeks. When the officer asked Weeks for a driver's license, he produced a license bearing the name of the deceased. Weeks then shot the officer and fled. Another officer witnessed the shooting and shot and wounded Weeks as he attempted to escape. Weeks was ultimately apprehended. A pistol and a brown imitation leather jacket *Page 406 
bearing Weeks's brother's name was found about ten yards from the place where Weeks was apprehended.
On October 7, Alabama Bureau of Investigation officials began a search for the deceased's body near Weeks's home in Tuskegee. Members of the search party found two notebooks containing materials relating to veterinary medicine in a wooded area behind Weeks's house. Later that day, they found the victim's body buried about one hundred feet from Weeks's house.
A forensic scientist testified that the gun found by the East Cleveland police near Weeks when they arrested him contained a bullet with Weeks's fingerprints on it. Another expert testified that the bullet removed from the victim's head had been fired from the gun in question. Fingerprints belonging both to Weeks and to the victim were found on the notebooks found near the location where the victim's body was recovered.
Jewel Martin testified that Weeks picked her up at the Astrology Club in Tuskegee on October 3. He drove her, in a car matching the description of the victim's car, to Montgomery, where she spent the night. The next day he returned to Montgomery and the two of them drove to Cleveland. Martin testified that while en route to Ohio she found the victim's driver's license in the glove box of the automobile. She asked Weeks about the license and he reportedly replied that he had killed the victim.
Weeks raised the following issues in support of his petition:
(1) Whether the trial court committed reversible error in allowing evidence to be introduced with regard to the shooting of the East Cleveland, Ohio, police officer.
(2) Whether the court erred in refusing to grant a mistrial upon learning that a witness, Jewel Martin, had been transported to the courthouse on the second day of the trial in the same car with two jurors.
(3) Whether the court should have granted a new trial based on Jewel Martin's claim that she was coerced by the State into testifying against Weeks.
 I. Testimony Regarding The Subsequent Crime.
The trial court allowed the State to introduce evidence regarding the shooting in Ohio, the defendant's flight from that crime, and his subsequent statements to the police in East Cleveland. The trial court allowed the testimony in order to link Weeks to the murder weapon. Since the gun was found under the porch of a third party's house, ten yards from the place where Weeks was apprehended, the testimony about the shooting was necessary to show how Weeks happened to be near the gun and why he had a motive for hiding it. Similarly, his admission to the East Cleveland police that the jacket found with the gun belonged to his brother linked him to the gun. Weeks argues that instead of limiting the testimony to the evidence necessary to link Weeks to the gun, the trial court allowed the State to elicit detailed testimony about the shooting, Weeks's flight from the scene of the shooting, and his statement to officers in East Cleveland.
The Court of Criminal Appeals addressed this issue and resolved it correctly. It is axiomatic that, during the trial of an accused, evidence of other crimes is not admissible if the only probative value of such evidence is to show the defendant's propensity to commit crimes of the sort charged. The rule does not, however, exclude evidence of all other crimes, only those offered to show the accused's bad character. *Page 407 
We disagree with the defendant's suggestion that the testimony should have been limited to the evidence necessary to link Weeks to the murder weapon. Evidence of the entire course of events from the time he was stopped until he was apprehended after the shooting all tends to link Weeks to the crime in Alabama. Testimony that Weeks was stopped while driving the victim's automobile, that he presented the victim's driver's license as his own, and that he reacted violently to being stopped for a minor traffic violation all circumstantially link him to the crime in Alabama and were properly admitted.
 II.
Whether A Mistrial Should Have Been Granted Because Of An Improper Contact Between A Witness And Two Jurors.
On the second day of the trial a bailiff transported Jewel Martin, one of the State's witnesses, to the courthouse in the same automobile with two jurors. At a hearing on the defendant's motion for a mistrial the bailiff and the jurors testified that there was no conversation between Martin and the jurors and that no one in the car discussed the case. Both witnesses testified that the incident in no way affected their impartiality or their ability to decide the case based solely on the evidence.
An unauthorized contact between the jurors and a witness does not necessarily require the granting of a mistrial. It is within the discretion of the trial court to determine whether an improper contact between a juror and a witness was prejudicial to the accused. Cox v. State, 394 So.2d 103, 106
(Ala.Crim.App. 1981). The trial court conducted a proper hearing and concluded from the evidence that no prejudice resulted. We agree with the Court of Criminal Appeals that there was no abuse of discretion shown.
 III.
Whether A New Trial Should Have Been Granted On The Grounds That The State Coerced A Witness Into Giving Favorable Testimony.
For reasons not disclosed, the State was apparently of the opinion that it would be necessary to take Jewel Martin, Weeks's traveling companion, into custody in order to secure her presence at the trial. The night before she was to testify, the police took her into custody at a local lounge and took her to a motel, where she was placed in the custody of a bailiff, Dorothy Macon. Ms. Macon was under instructions to watch Ms. Martin continually during the evening to prevent her from leaving the motel. (The desire to keep Ms. Martin in her presence was apparently the cause of the witness's being in the automobile the following morning while Ms. Macon was transporting the two jurors to the courthouse.) At some point during the night Ms. Macon apparently found it necessary to handcuff Ms. Martin to the bed in order to insure that she did not leave the motel room. At the motion for a new trial Ms. Martin complained bitterly about her treatment at the hands of those in the district attorney's office who were responsible for her ordeal. She claimed that "some of the things I said I was forced to say. . . . Because they already told me, they said if I don't testify against Varnell [sic] Weeks that I was going to do time in prison."
We have carefully reviewed the record of the hearing on the motion regarding Ms. Martin's testimony. She testified that she was "threatened" and "lied to" and "bribed," but was unable to state who had coerced her or what false testimony she was forced to give. She was asked about each attorney in the district attorney's office individually and was never able to identify any one person as the perpetrator. She stated only that "Ya'll threatened me." Similarly, the court questioned her at *Page 408 
length in an attempt to determine what portion, if any, of her testimony was inaccurate. When asked what part of her testimony was untrue, she replied "I don't remember."
It appears that the evidence supported a finding that Ms. Martin was coerced to testify, but there was no evidence that the State attempted to force her to testify to anything untrue or misleading. Her testimony at trial was substantially the same as the statement she gave to authorities in Ohio. The State may compel a witness in a criminal case to appear. Witnesses can even be confined if necessary to compel their presence. See § 14-6-3 (4), Code of Ala. We find no error in the refusal to grant a new trial.
The decision of the Court of Criminal Appeals is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.