ALMON, Justice.
Tony Murray was convicted of felony murder and was sentenced to life imprisonment. The Court of Criminal Appeals affirmed his conviction, Murray v. State, 588 So.2d 919 (Ala.Crim.App.1991), and this Court granted his petition for the writ of certiorari. The question presented is whether the trial court erred by failing to incarcerate a potentially exculpatory witness in order to ensure his presence at trial. The facts leading to Murray’s arrest, trial, and conviction are adequately presented in the Court of Criminal Appeals’ opinion. Murray, supra. Therefore, only those facts that are relevant to the issue being reviewed will be discussed.
Jerome Effinger was acquainted with Murray and with a number of the State’s witnesses. Before the jury in Murray’s trial was sworn, Murray’s lawyers informed the judge that they had interviewed Effinger and they stated that he could provide testimony that would exculpate Murray. However, they also stated that Effinger feared a number of the State’s witnesses and therefore was extremely reluctant to testify. As a result, they had not been able to serve him with a subpoena. The trial judge, who was already aware of Murray’s attempt to locate Effinger, noted that he had issued an instanter subpoena for Effinger and had authorized his bailiff to locate and serve him. The bailiff’s efforts also proved to be unsuccessful, and the trial judge noted that everyone had worked diligently to serve Effinger.
In light of Effinger’s apparent ability to avoid service, Murray asked the trial judge to incarcerate Effinger if he was found, in order to ensure his presence at trial. The trial judge responded by saying that he would not be “opposed to doing that if we could find him.” Murray also moved for a continuance in order to search for Effinger. His motion was denied, but the trial judge assured Murray that the court would continue to help him in his efforts to locate Effinger.
Murray’s case proceeded to trial before Effinger could be located. However, at the close of the State’s evidence, Effinger came to the courthouse and met with the trial judge, the prosecutor, and Murray’s lawyers in the judge’s chambers. Although there was not a court reporter present at the meeting, Murray’s lawyer was allowed to describe, for the record, the substance of that meeting. His description was not contradicted in any material respect by the prosecutor. It appears that Effinger was still frightened and remained very reluctant to testify. It also appears that the trial judge ordered Effinger to return to court the following day, prepared to testify. However, despite his presence in the judge’s chambers, the trial judge did not order his bailiff to serve Effinger with an instanter subpoena. It is not clear why Effinger was not served at that time.
Effinger did not return to court the following day and could not be located. Mur *926 ray’s lawyers again pointed out that Ef-finger’s testimony was crucial to Murray’s defense, and they questioned the court’s failure to take steps when he was in the judge’s chambers to ensure Effinger’s presence at trial, including incarcerating him, as they had requested earlier. The trial judge explained his failure to detain Effinger by stating, “I don’t know that I could have placed him in jail.” Murray’s motion for a mistrial was denied, and he was convicted. The judge held a hearing on Murray’s subsequent motion for a new trial, and at that hearing Murray again pointed out the prejudice that had resulted from the court’s failure to detain Effinger. The court also denied that motion.
In addressing this issue in its opinion, the Court of Criminal Appeals discussed only whether the trial judge had erred by failing to issue an order “attaching” the witness. Murray, supra, at 923. That court also implied, for reasons that are unclear, that Murray’s lawyers should have deposed Effinger. Id.
The importance of the defendant’s right to present witnesses on his behalf, and if necessary, to obtain the State’s aid in compelling them to testify, was ably expressed by Chief Justice Warren in Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967):
“The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant’s version of the facts as well as the prosecution’s to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution’s witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.”
(Emphasis added.) That right is especially crucial in cases, such as Murray’s, where the State is seeking to have the death penalty imposed.
One method of enforcing the right to present witnesses is compulsory service of process, a corollary right guaranteed by the Sixth Amendment to the United States Constitution, as well as by Art. I, § 6, of our State’s constitution. The court’s power of “attachment” is an integral part of compulsory service of process. However, as the Court of Criminal Appeals correctly noted, Murray, supra, at 923, the court’s power to attach generally arises only when a reluctant witness has been served with a subpoena and has failed to appear. Jarvis v. State, 220 Ala. 501, 126 So. 127 (1930); Ala.Code 1975, § 12-21-182(a); Rule 17.5, Ala.R.Crim.P.
However, Murray argues that attachment pursuant to § 12-21-182(a) is not the only method available to a trial court to compel a reluctant witness to attend. He argues that pursuant to Ala.Code 1975, § 14-6-3(4), and this Court’s opinion in Ex parte Weeks, 456 So.2d 404 (Ala.1984), cert. denied, Weeks v. Alabama, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324 (1985), trial courts have the authority to take witnesses into custody if that is necessary to secure their presence at trial. He contends that that power does not depend on whether the witness has been served with a subpoena.[1]
Section 14-6-3 lists various categories of persons, in addition to convicts, who can be detained in a county jail. Pursuant to § 14-6-3(4), “[pjersons [who are] committed on failure to give security for their appearance as witnesses in any criminal case” can be confined. That subsection should be read in pari materia with §§ 15-11-12 and -14. Section 15-11-12 allows the prosecution or defense to require witnesses to post a bond to ensure their attendance at trial. Section 15-11-14(a) provides that witnesses who refuse or fail to post such a bond may be committed to jail.
*927 In Weeks, supra, the only reported case construing § 14-6-3(4), a witness for the State was taken into custody to “secure her presence at ... trial.” 456 So.2d at 407. The witness was taken into custody at a local lounge and then taken to a motel, where she was placed in the custody of a female bailiff, who “apparently found it necessary to handcuff [the witness] to the bed in order to insure that she did not leave the motel room.” Id. This Court held that the witness’s confinement was authorized by § 14-6-3(4). 456 So.2d at 408. There is no indication, in either this Court’s opinion or in the Court of Criminal Appeals’ opinion, Weeks v. State, 456 So.2d 395 (Ala. Crim.App.1983), that the witness had been served with a subpoena or that an order of attachment had been issued.
In light of the foregoing authority, Murray contends that the trial judge was incorrect when he said that he could not place Effinger in custody. In response, the State argues that there is nothing in the record to show that Murray’s lawyers asked the trial judge to incarcerate Effinger on the day that he came to court. As stated earlier, no record was made of the meeting that was held in the judge’s chambers. However, Murray’s lawyers had asked the judge to detain Effinger if he was found before that meeting was held; the judge had appeared to consent to that request. In addition, it is clear that the trial judge and prosecutor were well aware of the difficulty that Murray and court personnel had experienced in locating Effinger and of Effinger’s fear and corresponding reluctance to testify. Because Murray’s position regarding Effinger had been made clear before Effinger came to court, and because of the unusual circumstances of this case, the absence of a record of the meeting cannot be used to defeat Murray’s argument.
Finally, the State argues that Weeks stands only for the proposition that § 14— 6-3(4) authorizes courts to confine witnesses for the prosecution. It contends that there is “no authority” to support Murray’s argument that defendants in criminal cases can also use § 14-6-3(4) to ensure that defense witnesses are present at trial. The serious constitutional flaws that are inherent in the State’s interpretation of Weeks are obvious, and the State’s arguments are not supported by that opinion. In Washington v. Texas, supra, the United States Supreme Court held that a Texas statute allowing the State to compel a defendant’s accomplice to testify for the prosecution, but not extending the same right to the defendant, violated the Sixth Amendment. 388 U.S. at 22, 87 S.Ct. at 1924. Similarly, the State’s argument in this case runs afoul of both the Sixth Amendment and Art. I, § 6, of our State constitution.
After reviewing the record, this Court concludes that Murray took every reasonable step to secure Effinger’s presence at trial, including enlisting the assistance of the trial court. Pursuant to this Court’s opinion in Weeks, supra, and the authority vested in trial courts by § 14-6-3(4) and §§ 15-11-12 and -14, we hold that due to the serious nature of the charge against Murray and the unusual circumstances of this case, the trial court erred by failing to either require Effinger to post a bond to ensure his presence at trial, or, in the event that Effinger refused or failed to post a bond, to detain him until his testimony was required. That failure allowed a potentially crucial witness to slip from the court’s grasp and seriously prejudiced Murray’s ability to present a defense. As a result, his conviction cannot stand.
For the reasons stated above, the judgment of the Court of Criminal Appeals is reversed, and this cause is remanded for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., dissents.

. As recently as 1980, at least 45 states had constitutional provisions or statutes giving trial judges the authority to incarcerate reluctant witnesses in criminal cases. For a listing of those provisions and statutes, see Carlson and Voelpel, Material Witness and Material Injustice, 58 Wash.U.L.Q. 1, Appendix A at 43-51 (1980).