The appellant, Calvin Nelson, was convicted of murder and was sentenced to life imprisonment. On this appeal from that conviction he raises four issues.
 I
The appellant claims that the trial court violated the mandates of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609
(Ala. 1987), by not requiring the prosecutor to explain his reasons for striking two black venirepersons.
The trial judge observed that there had been four black persons on the venire, that the State had struck two black persons, and that the other two black persons were seated on the jury. The court ruled that the defense had not established a prima facie case of discrimination and that the State was not obligated to give reasons for its strikes. R. 19-21. That ruling was correct.
Rule 18.4(f)(1)(ii), A.R.Crim.P., requires that the strike list for a noncapital felony case contain at least 24 jurors. The record contains neither the strike list nor an indication of the number of jurors on that list. However, if the strike list here contained the minimum number of jurors required by the rule, then the four black persons on the list constituted 1/6 of the available jurors. The *Page 434 
two black persons who actually sat on the appellant's jury also constituted 1/6 of the total number of jurors who served.
Because the defense presented no evidence apart from the State's striking of two black jurors, and because the jury contained the same proportion of black persons as the strike list from which it was selected, the defense failed to establish a prima facie case of racial discrimination. SeeHarrell v. State, 571 So.2d 1270 (Ala. 1990).
 "A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, . . . then it should also be available to show the absence of a discriminatory purpose."
Harrell v. State, 571 So.2d at 1271-72. See also Jones v.State, 603 So.2d 419, 420 (Ala.Cr.App. 1992); Hood v. State,598 So.2d 1022, 1023-24 (Ala.Cr.App. 1991); Ashley v. State,606 So.2d 187, 192 (Ala.Cr.App. 1992).
 II
The appellant contends that the trial court erred by admitting into evidence two statements he made to law enforcement officers while he was in the hospital.
In the early morning hours of June 13, 1991, Opp police officers Jenkins Logan and Larry Tucker arrived at the scene of a stabbing. They asked the victim, Jennifer Lacey Larkin, who had three or four stab wounds in her chest, "Who did this to you?" and she replied, "Calvin, Calvin Nelson." R. 36, 37, 158, 191, 224. After the victim was taken to the hospital, Officer Logan searched the area. Logan heard someone calling his name and he found the appellant, with two stab wounds in his chest, lying in some bushes nearby. The appellant told Logan that he and Larkin had been attacked by a masked man.
The appellant was taken by ambulance to Mizzell Memorial Hospital, where he was questioned by Opp Investigator Marcus Nawlin. Nawlin had been dispatched to the hospital following the report of Larkin's stabbing. He attempted to speak to Larkin but she was unable to talk. He then received a report that another stabbing victim, the appellant, had been brought to the hospital. When Nawlin asked the appellant "what happened," the appellant gave Nawlin a statement.
The appellant was eventually transferred to Flowers Hospital in Dothan, where he gave Officer Michael McDonald another statement. Both statements were admitted at trial over the appellant's objections.
The appellant argues that the first statement, given to Investigator Nawlin at Mizzell Memorial Hospital, was inadmissible because he was not advised of his Miranda rights. He argues that the second statement, given to Officer McDonald at Flowers Hospital, was inadmissible because he was in pain, under the influence of Demerol, and never acknowledged that he understood his Miranda rights. We hold that both statements were admissible.
No Miranda warning was required before Investigator Nawlin's questioning of the appellant at Mizzell Memorial Hospital because the appellant was not "in custody." Generally, questioning of a patient-suspect in the hospital does not amount to custodial interrogation when the suspect is not under formal arrest. 3 W. Ringel, Searches and Seizures, Arrests andConfessions § 27.3(a)(3) at 27-16 (2d ed. 1992). "[T]he particular detention or restriction of movement [of a hospital patient-suspect] must rise to the level of a de facto arrest before an individual will be deemed 'in custody' for purposes of Miranda." People v. Ripic, 182 A.D.2d 226, 587 N.Y.S.2d 776,779 (1992), appeal dismissed, 81 N.Y.2d 776, 594 N.Y.S.2d 712,610 N.E.2d 385 (1993). "[C]onfinement to a hospital bed is insufficient alone to constitute custody." People v. Miller,829 P.2d 443, 445 (Colo.App. 1991). See also United States v.Martin, 781 F.2d 671 (9th Cir. 1985) (accused, who had been making bombs in his apartment, had been injured in explosion, and had gone to hospital, was not "in custody" when *Page 435 
officers went to hospital and questioned him); State v.Clappes, 117 Wis.2d 277, 344 N.W.2d 141, 145-46 (1984) (accused, who was questioned by police officers in the hospital following an automobile accident, was not "in custody" because, although he was surrounded by an "atmosphere of restraint," the restraint was not "created by the [law enforcement] authorities").
In Lockett v. State, 489 So.2d 653 (Ala.Cr.App.), cert. denied, 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986), this court observed that
 "The appellant's statements to Officer Renfroe in the emergency room were not in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The appellant, at this time, was not the subject of custodial interrogation. He was merely being questioned by Renfroe as a victim of a gunshot wound. Therefore, this statement was properly admitted into evidence."
Lockett v. State, 489 So.2d at 657-58.
The appellant's statement to Officer McDonald at Flowers Hospital was admissible, despite the fact that the appellant was in some pain and was receiving medication, and despite the fact that he did not respond verbally to a question whether he understood his rights. McDonald testified that the appellant was "alert, coherent," R. 319, "responsive," R. 335, and did not appear to be "under the influence of any drugs," R. 324. Officer McDonald read the appellant his Miranda rights and, when he asked the appellant whether he understood those rights, the appellant answered by nodding his head. R. 318.
"[A] defendant's confession [i]s not involuntarily made merely because he was in pain as a result of a gunshot wound at the time he made his confession." Holladay v. State,549 So.2d 122, 127 (Ala.Cr.App. 1988) ("although the appellant's wounds were possibly life-threatening, [the police officer testified that] the appellant was conscious, alert, and responsive" when he made his statement), affirmed, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989);Klingel v. State, 518 So.2d 853, 856 (Ala.Cr.App. 1987) (same);Thompson v. State, 462 So.2d 777, 778-79 (Ala.Cr.App. 1984) (fact that defendant's statement was made while he was in pain at hospital did not render confession involuntary).
Statements made under the influence of sedatives, pain-killers, or other drugs are voluntary unless the drug renders "the mind of the defendant . . . substantially impaired . . . [so] as to make [the] individual unconscious of the meaning of his words." Watkins v. State, 495 So.2d 92, 99
(Ala.Cr.App. 1986). The trial court was warranted in finding that the appellant did not establish that he was under the influence of Demerol to the degree that it rendered his statements involuntary. See Cleckler v. State, 570 So.2d 796,804 (Ala.Cr.App. 1990); Holladay v. State, 549 So.2d 122, 127
(Ala.Cr.App. 1988), affirmed, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989);Cross v. State, 536 So.2d 155, 158-59 (Ala.Cr.App. 1988).
The findings of the trial court as to the voluntariness of a confession, following a hearing held outside the presence of the jury, will not be disturbed on appeal unless "manifestly contrary to the great weight of the evidence." Ex parteMatthews, 601 So.2d 52, 53 (Ala.), cert. denied, ___ U.S. ___,112 S.Ct. 2996, 120 L.Ed.2d 872 (1992).
 III
The evidence of the appellant's guilt was sufficient to warrant the denial of his motion for a judgment of acquittal and the submission of the case to the jury.
The dying declaration of a deceased that the accused is the one who caused his injury is direct evidence, Booth v. State,247 Ala. 600, 605, 25 So.2d 427, 431 (1946), and sufficient, in itself, to justify submitting the case to the factfinder,Crowell v. State, 233 Ala. 201, 171 So. 267 (1936). Thus, the State's evidence that the victim, in answer to the question, "Who did this to you?" replied, "Calvin, Calvin Nelson," constituted a prima facie case against the appellant.
In addition, the jury was entitled to disregard the appellant's version of the events surrounding the victim's death because the *Page 436 
appellant's statements to law enforcement officers were either inconsistent with each other, incompatible with the physical evidence found at the scene, or highly improbable. Investigator Nawlin related some five or six discrepancies between the statement he, Nawlin, took from the appellant and the one Officer McDonald took from the appellant. R. 444-47. The appellant's claim that a masked intruder stabbed him inside his car was incompatible with the physical evidence that none of the appellant's blood was found in or around the vehicle. R. 508-510. Finally, it was highly improbable that the clothing worn by the alleged masked assailant would exactly match the clothing worn by the officer to whom the appellant gave the description. R. 425.
On appeal, the appellant argues the effect of other testimony pointing to the improbability of his guilt, and to the probability of the unknown masked assailant's guilt. Although a jury argument could be made that the murder was committed by someone other than the appellant, the evidence in this case waslegally sufficient because the jury could have reasonably concluded that the evidence excluded every other reasonable
hypothesis except that of the appellant's guilt. See Murray v.State, 588 So.2d 919, 923-24 (Ala.Cr.App.), reversed on other grounds, 588 So.2d 924 (Ala. 1991), and authorities cited therein.
 IV
The appellant contends that the trial court erred when it denied his motion for new trial based on the misconduct of Juror Robert Clark. The appellant claims that Clark failed to acknowledge that he knew the victim's father. He also claims that Clark received an unauthorized communication from a member of the appellant's family.
We reject the appellant's first claim because he did not show that the prospective jurors were actually asked if they knew the victim's father. Juror Clark testified that he was not asked that specific question. R. 922. Our review of the record discloses that although there was a discussion among the attorneys and the trial judge about qualifying the jurors as to any "relationship . . . and personal acquaint[ance]" with the victim's father, R. 7, the question itself was never asked.
Moreover Juror Clark stated that he knew the victim's father only minimally, "after seeing him two or three times and speaking to him across the street." R. 922. Even if the appellant had shown that the juror failed to respond, he did not, under the circumstances, establish that his rights were prejudiced. See Limbaugh v. State, 581 So.2d 5, 9
(Ala.Cr.App. 1991); Knighten v. State, 402 So.2d 363, 364
(Ala.Cr.App. 1981).
Extensive testimony as to the appellant's second claim was elicited at a hearing on the motion for new trial. Jeanette Merrills, the appellant's aunt, testified that one evening during the course of the appellant's trial, Juror Robert Clark telephoned her home and asked for her husband Joe. Mrs. Merrills replied that her husband was not at home, but that she would ask him to return Clark's call when he came back. Mrs. Merrills testified that the conversation proceeded as follows:
 "[Clark] told me that he had saw Joe earlier in the courtroom and he wanted to know why he was there and I said [the appellant] is my nephew and I sa[id] I understand that you are on jury duty and he said, yeah, that's why I couldn't talk with [Joe] in the courtroom. And I said well I understand there was a lot of lies being told and he said yes, it was." R. 844.
On cross-examination, Mrs. Merrills admitted that she was not sure whether she had first mentioned "lies being told," and Mr. Clark had agreed, or whether Mr. Clark had first made the comment about "lies being told" and she had agreed.
Juror Robert Clark testified that he saw his friend, Joe Merrills, in the courtroom during the first day of the appellant's trial. He did not know that Merrills was related to the appellant and he wondered why Merrills was present at the trial. Clark testified that he called Merrills at home the evening of the first day of trial to "let him know the reason I could not speak to him was because I was a juror." R. 891. Juror Clark described the following conversation he had with Merrills: *Page 437 
 "I said Joe, I didn't want you to think that I was overlooking you in the courtroom, but as a jury we are not allowed to talk with anybody and I asked him what he was doing there and he said that Calvin Nelson was a nephew of his. And I said, how and he said that's my wife's [sister's] son and I told him I said, well I've never seen him. I didn't know him." R. 892.
Clark denied that he and Merrills discussed the case any further. He also denied that there was any reference, in his conversation with either Mr. or Mrs. Merrills, to "lies being told." R. 900. Clark testified that after the jury retired to deliberate, the first two votes were eleven to one in favor of guilty. R. 907. He was the juror who voted to acquit. On the third vote he changed his vote to "guilty" because "there were so many things that didn't pan out. . . . [he] just wanted to be fair." R. 916-17.
Joe Merrills testified that when he returned Robert Clark's telephone call, Clark explained why he did not speak to Merrills in the courtroom. Merrills said that the appellant was his nephew and remarked that it "seems like lots of lies going on over there." R. 934. According to Merrills, Clark "kind of grunt[ed] — he didn't say too much on that." Id.
In Cox v. State, 394 So.2d 103 (Ala.Cr.App. 1981), this Court stated that
 "[w]hether there has been a communication with a juror and whether it has caused prejudice are questions of fact to be determined by the trial court in the exercise of sound discretion. This ruling will not be disturbed in the absence of a showing of abuse of discretion."
Cox, 394 So.2d at 106 (citations omitted). Cox was cited with approval by the Alabama Supreme Court in Ex parte Weeks,456 So.2d 404 (Ala. 1984), cert. denied, 471 U.S. 1030,105 S.Ct. 2051, 85 L.Ed.2d 324 (1985), when that court observed that "[i]t is within the discretion of the trial court to determine whether an improper contact between a juror and [a third party] was prejudicial to the accused." Weeks, 456 So.2d at 407. The test of prejudice was restated by our Supreme Court in Ex parteTroha, 462 So.2d 953 (Ala. 1984):
 "The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered."
Troha, 462 So.2d at 954 (quoting Roan v. State, 225 Ala. 428,435, 143 So. 454, 460 (1932) (emphasis added by the court inTroha).
At the conclusion of the hearing on the motion for new trial, the assistant district attorney filed a brief in opposition to the motion, arguing that a reading of all the testimony supported Mr. Merrills's version of the telephone call in question: "[O]ne of the jurors had a conversation with a relative of the Defendant without having prior knowledge of that person's relationship with the defendant, [and] the conversation, at the most, contained one statement by the defendant's relative which was beneficial to defendant and to which the juror did not respond." CR. 153.
In its order denying the motion for new trial, the circuit court stated that it had "reviewed the State's brief in opposition to the motion, and f[ound] the reasoning therein persuasive of the issue." CR. 157.
Here, as in Weeks, "[t]he trial court conducted a proper hearing and concluded from the evidence that no prejudice resulted." 456 So.2d at 407. The facts support the ruling of the trial court that there was no possibility that "one statement by the defendant's relative which was beneficial to defendant and to which the juror did not respond," might have influenced the verdict. Because the order denying the motion is supported by the facts, "[t]here is no evidence that there was an abuse of discretion," and the order is due to be upheld on appeal. See Hagood v. State, 588 So.2d 526, 533
(Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1943,118 L.Ed.2d 548 (1992).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 438