Rel: May 1, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

_____

## CR-2025-0458

_____

## State of Alabama

## v.

## Sylvia Shamel Scott

## Appeal from Montgomery Circuit Court
## (CC-21-975)

COLE, Judge.

The State of Alabama appeals the order of the Montgomery Circuit Court dismissing with prejudice the indictment charging Sylvia Shamel Scott with second-degree theft of property and second-degree domestic violence, violations of §§ 13A-8-4 and 13A-6-131, Ala. Code 1975. For the reasons discussed below, we hold that the trial court's dismissal of Scott's

indictment with prejudice based on want of prosecution constituted an abuse of discretion. Thus, we reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.

Facts and Procedural History

On July 23, 2021, a Montgomery County grand jury indicted Scott for second-degree theft of property and second-degree domestic violence based on her commission of a second-degree burglary. Count I of the indictment charged, in pertinent part, that "Scott ... did knowingly obtain or exert unauthorized control over a ... gun, the property of Cory Alexander Clay, with the intent to deprive the owner of the said firearm ... in violation of section 13A-8-4," Ala. Code 1975. (C.[1] 43.) Count II of the indictment charged, in pertinent part, as follows:

> "Scott ... did commit the offense of Burglary in the Second Degree, in violation of Section 13A-7-6(b) of The Code of Alabama, in that [she] did knowingly and unlawfully enter the lawfully occupied dwelling-house of ... Cory Alexander Clay, with he intent to commit a theft or felony therein, and/or while effecting the entry or while in the said building or in immediate flight therefrom, [she] did cause physical injury to another person, Cory Alexander Clay, ... and [he] was a person with whom the defendant had a child in common, in

---

[1]"C." refers to the clerk's record in this case. "R." refers to the reporter's transcript from the June 9, 2025, hearing. "SR." refers to the reporter's transcript from the May 12, 2025, hearing.

2

> violation of section 13A-6-131 of the Code of Alabama, against the peace and dignity of the State of Alabama."

(C. 45.)

On January 11, 2022, Scott's counsel moved for a mental evaluation of Scott. The trial court ordered a mental evaluation on February 16, 2022. The Alabama Department of Mental Health submitted its report to the trial court on January 31, 2023. A trial date was set for April 3, 2023. On February 15, 2023, Scott filed a motion to substitute counsel, which was granted on February 20, 2023. On March 21, 2023, Scott's new counsel filed a new motion for a competency evaluation, alleging, in part, that Scott had "suffered a mental health crisis" and had been "admitted to Jackson Hospital and then was supposed to be released to Crossbridge for further treatment." (C. 91.) An order was entered on April 28, 2023, scheduling Scott's case for trial on May 12, 2025. On May 6, 2025, Scott entered a plea of not guilty and not guilty by reason of mental disease or defect.

On May 12, 2025, the State asked for a continuance because the "investigators were unable to get subpoenas served." (SR. 2.) Scott moved to dismiss the charges, but the trial court found that it was "not the State's fault that the clerk's office didn't issue the subpoenas in a

timely manner." (SR. 2.) Scott then contended that the victim knew about the trial and could have come without a subpoena, prompting the trial court to respond: "But he's not coming. Why are we doing this?" (SR. 2-3.) When the State attempted to answer, the trial court interrupted: "He doesn't want to do this. He's the victim. He doesn't want this." (SR. 3.) The State explained that the State had a "compelling interest" in pursuing the case regardless of the victim's wishes. The State further noted that "an offer [had been] made [to Scott] that was for not time," but Scott wanted "to proceed to trial." (SR. 3.) The State also notified the trial court that if the victim "does not show up for trial [at the next trial setting], then the State would be moving for a writ of attachment." (SR. 3-4.) Scott's counsel then informed the trial court that he had "an affidavit from the alleged victim" in which the victim "specifically stated he doesn't want to proceed with this case." (SR. 4.) The trial court then stated that, "if the subpoena was served and [the alleged victim] didn't show up, [it] would dismiss this [case]." (SR. 4.) The trial court, however, granted the State's motion to continue the trial to June 9, 2025, because the subpoenas had not yet been served.

4

On June 9, 2025, the State moved "for a writ of attachment on witness Corey Clay," who had been served with a subpoena but had not appeared for trial that morning. (R. 2.) Scott's counsel objected to the writ, arguing that Clay had already made it known "that he didn't want to proceed forward" and "filled out an affidavit stating as such." (R. 3.) The trial court then asked the State's counsel: "[S]ince when do we do this in domestic violence cases? Is something special happening that I'm unaware of?" (R. 3-4.) The trial court additionally asked: "How many victims have you all attached or asked for a writ of attachment … [when the victim] did not want to go forward?" (R. 4.) The State's counsel explained that the State considers the victim's position and the "totality of the circumstances" in deciding to proceed and that, when the State elects to proceed "against the victim's wishes," the State provides "an offer [to the defendant] that takes [the victim's position] into consideration." (R. 4.) The State's counsel sought a writ of attachment because Scott had elected to proceed to trial. The trial court then expressed its disagreement with the State's requiring a victim to testify:

"Hmm, interesting. You don't feel that somehow this makes the victim victimized a little -- the alleged victim, because I don't know if they're the victim, and I don't know any of the facts at this point. But, isn't that a bit traumatizing to have

5

the sheriff show up at your house and your job and put you in the back of a car and cart you off to the --"

(R. 5.) When the State explained that the writ was sought only when deemed "absolutely necessary," the trial court repeated its concerns from the May 12, 2025, hearing: "And what makes this absolutely necessary? They are saying they don't want to go forward. They're saying they don't want to participate. They're saying this is no longer their desire to prosecute her. Why are we doing this?" (SR. 4.) The State responded: "The victim in this case has never said that [these crimes] did not occur." (R. 6.) Rather, the victim's affidavit stated "[t]hat he no longer wanted to prosecute." (R. 6.) However, the State noted that "it's not the victim's place to prosecute; it's the State's." (R. 6.) The trial court responded:

> "I informed you that your witnesses needed to be here. They were not here at the last trial setting, and I gave you a continuance, because the subpoenas had not been sent. And you had said that you would send your … investigators out to … try to get them here at the last trial setting. Here we are again. … We're not going to do that [issue a writ to compel the victim to appear]. We're going to do something else."

(R. 6-7.) When asked if the State had "[a]nything else," the State responded that it was ready to proceed to trial without the victim's testimony. (R. 7.)

6

The trial court then asked whether Scott wanted a jury trial or a bench trial, and Scott's counsel stated: "[W]e would ask for a <u>jury</u> trial." (R. 7 (emphasis added).) However, the trial court responded: "Okay. Go downstairs and get the panels, because <u>I was ready for a bench trial now</u>." (R. 7 (emphasis added).) Scott's counsel immediately changed his previous request: "Well, we'll do a bench trial." (R. 7.) The trial court turned to the State: "All right. Call your first witness." (R. 7.) The following exchange then occurred:

> "[The State]: Okay. Judge, I would ask for time to get those witnesses here, <u>because I was</u> --
>
> "The Court: No, no, no. Now, I told you --
>
> "[The State]: Hold on. I'm aware, Judge. But <u>if I may. That was for</u> --
>
> "The Court: No. I told you they had to be here.
>
> "[The State]: Right, Judge. That was -- that was -- and <u>we've addressed that witness</u> --
>
> "The Court: I told you they had to be here.
>
> "[The State]: Judge, if I may. <u>As standard across this courthouse</u> --
>
> "The Court: No, no, no.
>
> "[The State]: -- <u>we elect</u> --

7

"The Court: I told you they had to be here.

"[The State]: And, Judge, what was unclear to me was if you meant all witnesses or this particular witness.

"The Court: I told you your witnesses had to be here.

"[The State]: And, Judge, <u>my notes</u> --

"The Court: Are they here?

"[The State]: <u>My notes</u> --

"The Court: I'll hear what you have to say.

"[The State]: -- and my recollection are in fact that <u>we were told</u> --

"The Court: Ma'am, I'm done with the arguing.  I told you that is where we are.  Call your first witness."

(R. 7-8 (emphasis added).)

After a "brief pause," the State responded: "I am in the process of calling my first witness." (R. 8.)  The trial court then instructed the State: "You have two minutes in which to call the witness." (R. 8.)  After another "brief pause," the trial court stated: "That's your two minutes. Where is your witness?"  (R. 8-9.)  The State responded that "she … will be in at 12" and requested to have "until this afternoon, because as this protocol in all other courtrooms in this courthouse, <u>we elect panels, we select a jury and then the State brings on their witnesses</u>."  (R. 9 (emphasis

8

added).) The trial court responded: "[Y]ou can tell me what other practices are, but my words were clear that your witnesses needed to be in this courtroom." (R. 9.) The State attempted to object: "And again, Judge," which the trial court interrupted by stating: "[T]hey are not here." (R. 9.) The State attempted again, "The --" to which the trial court again interrupted "--if I'm talking, you are not interrupting. And your witnesses are not here, consequently, your case is dismissed with prejudice for failure to prosecute." (R. 9.) The trial court then issued a written order on June 10, 2025, stating: "At the date and time set for trial, no witness was present for the State of Alabama. Therefore, this case is hereby Dismissed with Prejudice." (C. 99 (emphasis added).)

On June 11, 2025, the State filed a motion to reconsider, noting that, after the trial court denied the State's motion to attach the victim, the State had been "ready to move forward with a jury trial." (C. 100 (emphasis added).) The State argued that, in ordering the State to call its first witness, the trial court had not complied with Rule 18.1, Ala. R. Crim. P. Specifically, the State complained that the trial court never addressed Scott "personally, to ascertain if [she] was waiving her right knowingly, voluntarily, and intelligently," as Rule 18.1 requires. (C.

9

100.) Likewise, the State noted, "the State never consented" to the waiver of a jury trial, which Rule 18.1 also requires. (C. 100.) The State then argued that the trial court had abused its discretion by dismissing Scott's case because witnesses were not present <u>before a jury had been selected</u>. (C. 102.) The trial court did not rule on the State's motion. The State filed its notice of appeal on June 13, 2025, and this appeal follows.

<u>Standard of Review</u>

When reviewing a trial court's decision to dismiss a case for want of prosecution, this Court applies an "abuse of discretion" standard. <u>See, e.g.</u>, <u>State v. Watts</u>, 35 So. 3d 1 (Ala. Crim. App. 2009), and <u>State v. Stallworth</u>, 337 So. 3d 1201 (Ala. Crim. App. 2021).

<u>Analysis</u>

On appeal, the State argues that the trial court abused its discretion when it dismissed Scott's indictment with prejudice for want of prosecution based on the State's failure to have a witness in the courtroom when the trial court attempted to begin a <u>bench trial</u> without complying with Rule 18.1, Ala. R. Crim. P. Conversely, Scott argues that the trial court acted within its discretion in dismissing her indictment. Scott also contends that the State waived its objection to proceeding with

10

trial by announcing that it was "ready for trial" and because the State "never actually objected" in court to the trial court's dismissal. (Scott's brief, pp. 14, 15.)

As an initial matter, contrary to Scott's contentions, the State's objection to the trial court's dismissal of Scott's case was preserved. "An objection must be specific enough to put the trial court on notice of any alleged error and provide the court with an opportunity to correct any error if necessary." Nash v. State, 229 So. 3d 1112, 1113 (Ala. Crim. App. 2017) (citing Finch v. State, 715 So. 2d 906, 912 (Ala. Crim. App. 1997)). "However, 'magic words' are not required as long as it is clear from the record that the trial court was aware of the basis of the objection." Id. Here, although the State's attempts at objecting to the trial court's rulings were cut off by the trial court, the State's objection to being required to immediately proceed with a bench trial instead of being permitted to select a jury and proceed with a jury trial was made clear. (R. 7-9.) At the end of the hearing, the State made one last request that a jury be selected when the State said that the "protocol in all courtrooms in this courthouse, we elect panels, we select a jury and then the State brings on their witnesses." (R. 9.) Although the trial court had refused

11

to attach the alleged victim at the State's request, the State's alternative request, which would allow the State to call its witnesses after jury selection, was also denied when the trial court reiterated that the witnesses "are not here" and dismissed both charges. (R. 9.) It is equally clear from this record that the State did not consent, as required by Rule 18.1, Ala. R. Crim. P., to Scott's counsel's waiver of Scott's right to a trial by jury. Finding the State's argument preserved, we now consider whether the trial court abused its discretion.

It is well settled that a trial court has authority and discretion to manage its docket. As we recognized in State v. Watts, 35 So. 3d 1 (Ala. Crim. App. 2009), a circuit court "'"is vested with discretion in the conduct of a trial, and the appellate courts will not interfere with the exercise of that discretion unless it clearly appears that there has been an abuse of discretion."'" Id. at 4 (quoting Baker v. State, 906 So. 2d 210, 269 (Ala. Crim. App. 2001) (reversed on other grounds by Ex parte Baker, 906 So. 2d 277 (Ala. 2004)), quoting in turn Carden v. State, 621 So. 2d 342, 346 (Ala. Crim. App. 1992)).

In Watts, this Court considered whether a trial court had abused its discretion by dismissing charges without prejudice against a

12

defendant based on want of prosecution because the victim and a witness were not present for voir dire. We recognized that "the process of voir dire examination remains within the sound discretion of the circuit court." Id. (citing Clark v. State, 294 Ala. 493, 495, 318 So. 2d 822, 824 (1975)). However, we held that the trial court had abused its discretion because it "could have imposed less stringent measures than dismissing the charges." Id. at 7. In so holding, we noted that "Watts made no showing of prejudice, on speedy-trial ground or otherwise, as a result of the absence of the victim and witness for presentation to the venire; the victim and the witness would be available to testify for trial; and there was no indication of undue continuances." Id.

In State v. Stallworth, 337 So. 3d 1201, 1210 (Ala. Crim. App. 2021), we again acknowledged a trial court's authority to manage its case docket, which includes placing "reasonable time limits on the parties in a case." However, as we explained, the trial court's exercise of discretion in managing its docket "does not allow the court to interfere with the State's duty to prosecute cases, which the dismissal of the indictment in this case does." Id. Notably, in Stallworth, we found an abuse of discretion even though the defendant moved to dismiss the case, the

13

victim no longer wished to prosecute <u>and</u> disputed that any criminal offense occurred, and the State failed to respond within seven days of the motion as ordered by the trial court under threat of dismissal. <u>Id.</u> at 1203-04. In holding that the trial court had abused its discretion, we explained that a trial court may not "'impermissibly interfere with the State's right to prosecute'" and should not exercise its discretion in an "'"arbitrary, fanciful, or clearly unreasonable" manner.'" <u>Id.</u> at 1210 (quoting <u>Watts</u>, 35 So. 3d at 6). Accordingly, we held that

> "the circuit court did not have the authority to grant Stallworth's motion to dismiss the indictment against him based on a factual determination of the evidence or for the State's failure to object to the motion to dismiss the indictment within a prescribed time, especially where the delay in the filing of the objection was not unreasonable and did not interfere with Stallworth's right to a speedy trial."

<u>Id.</u>

Likewise, the record in this case contains circumstances establishing an abuse of discretion by the trial court. Beginning with the May 12, 2025, hearing, when the State indicated that the alleged victim had not been served with a subpoena to appear in court, but that the State wanted to go forward with the case, the trial court questioned: "[W]hy are we doing this?" (SR. 3.) This was despite the State's previous

14

explanation that Scott had "picked up another [Domestic Violence] Third and Criminal Trespass" while on bond in this case and despite the State's accurate explanation that the State is charged with representing not only the victim, but also the public at large, and that the public has a legitimate interest in seeing criminal charges brought to trial. The State also made the trial court aware that once the alleged victim was served with a subpoena to appear, if he failed to appear, "then the State would be moving for a writ of attachment." (SR. 3-4.) At the June 9, 2025, hearing held on the morning that Scott's case was set for trial, the trial court continued to indicate its surprise that the State would want to go forward without the victim's blessings, even though the victim had indicated only an unwillingness to prosecute, not that no crime had occurred as in Stallworth. The trial court had denied the State's motion to bring the victim to court via a writ of attachment. Then, when the State indicated that it would proceed to a trial without the victim, the trial court suggested a bench trial. The trial court's stated desire for an immediate bench trial prompted Scott's counsel to change his request for a jury trial, which he had just stated. When the State attempted to object, the trial court repeatedly interrupted the State's counsel. The

15

trial court emphasized that it had told the State that its "witnesses needed to be in this courtroom," and the State responded that witnesses were usually required to appear after jury selection and that the State did not know which witness or witnesses, if any, were required to appear before jury selection. (R. 8-9.) However, even if the trial court had instructed the State to have witnesses present at the call of the docket, the Montgomery County District Attorney's Office had no authority to force the witness to be present in the courtroom at the call of the docket because "the court's power to attach generally arises only when a reluctant witness has been served with a subpoena and has failed to appear. Jarvis v. State, 220 Ala. 501, 126 So. 127 (1930); Ala. Code 1975, § 12-21-182(a); Rule 17.5, Ala. R. Crim. P." Ex parte Murray, 588 So. 2d 924, 926 (Ala. 1991). The State's only enforcement mechanism, attachment of the reluctant witness by the court, had been denied.

The trial court then, without engaging Scott in a personal colloquy for her to waive her previously asserted right to a jury trial and without the State's consent, which were both required by Rule 18.1, Ala. R. Crim. P., attempted to begin the bench trial immediately, ordering the State to call its first witness. See Rule 18.1(b)(1) ("[T]he defendant may waive his

16

right to trial by jury, <u>with the consent of the prosecutor</u> and the court …

in open court upon the record and <u>with the consent of the prosecutor</u> and

the court.   Before accepting a waiver, <u>the court shall address the

defendant personally</u> in open court <u>and</u> shall <u>advise the defendant of his</u>

or her <u>right to a trial by jury</u>, <u>and</u> shall <u>ascertain that the waiver is

knowing, voluntary, and intelligent.</u>" (emphasis added)).  <u>See also</u> <u>State

v. Watkins</u>, 914 So. 2d 922, 924 (Ala. Crim. App. 2005) (holding that "the

trial court erroneously proceeded to try the appellee without a jury and

improperly dismissed the State's case against the appellee for lack of

prosecution after the State indicated that it could not proceed until a jury

had been sworn"), and <u>Singer v. United States</u>, 380 U.S. 24, 34-35 (1965)

(rejecting the argument that a defendant has the right to have a bench

trial regardless of whether the State consents to the waiver of a jury trial

and recognizing that "the Government, as a litigant, has a legitimate

interest in seeing that cases in which it believes a conviction is warranted

are tried before the tribunal which the Constitution regards as most

likely to produce a fair result").  In addition, as in <u>Watts</u> and <u>Watkins</u>,

the State indicated that the witness would be present <u>after</u> jury selection.

However, the trial court required that the State's witness be called to

17

testify within "two minutes," and, after that time had elapsed, it sua sponte dismissed Scott's indictment with prejudice. Although the trial court had ordered the State to produce its witnesses, based on the procedural posture of the case, this Court views the trial court's actions as a pretrial dismissal, not as a midtrial dismissal for want of prosecution.

Given the totality of these circumstances, the trial court's dismissal with prejudice was both unduly severe and "unreasonable." We thus hold that the trial court abused its discretion by dismissing Scott's indictment with prejudice.

<u>Conclusion</u>

The trial court's order dismissing Scott's second-degree-theft-of-property and second-degree-domestic-violence charges with prejudice is due to be reversed, and this case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Windom, P.J., and Kellum, Minor, and Anderson, JJ., concur.