111 So.2d 746 (1959)
LeRoy COLLINS, as Governor of the State of Florida, et al., as and constituting the State Board of Conservation of Florida, Appellants,
v.
Lewis H. HORTEN, et al., Appellees.
No. B-27.
District Court of Appeal of Florida. First District.
May 7, 1959.
*747 Richard W. Ervin, Atty. Gen., Joseph C. Jacobs, Asst. Atty. Gen., Caldwell, Parker, Foster, Madigan, Oven & Moriarty, Tallahassee, and C. Bourke Floyd, Apalachicola, for appellants.
Williams & Owens, Tallahassee, for appellees.
STURGIS, Chief Judge.
This is an appeal from an order granting an injunction to the appellees against the enforcement of Rule No. 12 of the State Board of Conservation of Florida, the full text of which is as follows:
"During the period when natural state-owned reefs and bottoms are closed to oyster taking and harvesting, all private beds whether leased or granted *748 shall also be closed. During this closed period (May 1 to September 1 of each year) no person, firm or corporation shall possess, transport within the State, offer for sale or barter, shuck, process or refrigerate, gather, disturb, molest or display any Florida oysters. No person, firm or corporation shall possess or transport oysters or oyster meats from any source which are not accompanied by a legal, bona fide and valid invoice which provides information covering place and date of origin and complete details regarding destination."
The effect of this rule is to extend the operation of Section 370.16(15), Florida Statutes, F.S.A., which provides a closed season upon the taking of oysters from natural bars, to the taking during that season of cultivated oysters from leased bottoms by the lessees.
A temporary injunction preceded the final decree and by an order denying a motion to dissolve it the learned Chancellor held that the Board was without authority to promulgate its Rule No. 12 and gave comprehensive reasons for that holding.
The following quotation from that order aptly states the law supporting the Chancellor's conclusion, and ours, that Rule 12 of the Board exceeds its lawful authority:
"It must be borne in mind that, while the constitution vests in the Game and Fresh Water Fish Commission legislative power with respect to those forms of wild life coming under the jurisdiction of that commission without regard to the statute law on the subject, there is no constitutional grant of power to the Board of Conservation. The Constitution merely provides that
"`The Legislature may vest in such board or commission, now created or that may be created by it, authority to make and establish rules and regulations without regard to uniformity of application, relating to the conservation of salt water fish and salt water products.' (Article XVI, Section 33)
"We must, therefore, look to the statutes for the power of the Board, and in so doing must recognize that the legislature has authority to delegate the legislative power in this particular field and that the constitution contemplates that the legislature may see fit to give a broad range to the discretion of the Board. On the other hand, the determination of what, if any legislative powers may be exercised by the Board is a prerogative of the legislature and the Board may exercise only those powers conferred by the legislature.
"With these principles in mind, a careful study of the statutes is necessary in order to ascertain the legislative intent on this subject.
"We find the duties of the Board stated in broad language:
"`* * * to preserve, protect and manage the marine, crustacean, shell and anadromous fishery resources of the state in the waters thereof; to regulate the operations of all fishermen and vessels of this state engaged in the taking of such fishery resources * * *.' (Section 370.02, F.S.A.)
"Rule making power is conferred upon the Board in the following language:
"`The state board of conservation shall make, adopt, promulgate, amend and repeal all rules and regulations necessary or convenient for the carrying out of the duties and obligations and powers conferred on said board. Further clarifying the rule making power of the board it shall have power and authority to make, adopt, promulgate, amend, and repeal all reasonable rules and regulations as shall be necessary or convenient to the conservation, *749 development and propagation of the salt water resources of Florida and for the carrying out of the duties, obligations and powers conferred upon said board by law.'
"Standing alone this language is indicative of a legislative intent to vest the broadest possible power in the Board of Conservation  to exercise to exhaustion the authority granted by the constitution to delegate legislative power to the Board. But the quoted language is only a part of a long and, at times, complex chapter of the statutes. One section of Chapter 370 cannot be read and construed without regard to the remainder of the chapter. When we read further we find that the legislature quite obviously did not intend to leave the whole field of the regulation of marine fisheries to the Board.
"There are detailed restrictions upon the use of seines and nets in the taking of salt water fish.
"There are specific limitations upon the sizes of various species of fish that may be taken.
"There are regulations of the manner of taking certain types of fish and even the hours when they may be taken commercially.
"In at least five different sections we find legislative establishment of closed seasons with respect to different types of marine life.
"In construing Chapter 370 as a whole, the court is confronted with two alternatives:
"It must give full force and effect to the literal language quoted from Section 370.02 and recognize the Board of Conservation as having plenary power in the regulation of marine life and, as a necessary consequence, must hold all of the specific regulations contained in Chapter 370 to be subject to repeal, change, or enforcement by and according to the sole discretion of the Board, or

"It must construe the statute as a whole and limit the legislative powers granted to the Board of Conservation to those phases of the subject not covered by specific action by the legislature.
"Since the function of the court is to ascertain and give effect to the intent of the legislature, the latter alternative would seem to be the only logical conclusion that may be reached. It would be unreasonable to assume that the legislature intended its carefully prepared plans for the protection of various types of marine life duly enacted into law to be subject to repeal at any time by the Board of Conservation.
"It follows that the closed season on oysters provided by Section 370.16(15) is controlling law and is not subject to change by the Board of Conservation.
"But the Board takes the position that its Rule No. 12 fixing a closed season on oysters from leased beds is not in conflict with the statute for the reason that the statute relates only to natural bars and therefore leaves the removal of oysters from cultivated bars entirely unregulated, and that its rule is designed to operate in this otherwise unregulated field and is authorized by the grant of the rule making power above quoted.
"This argument cannot prevail. The language of the statute itself reproduced below[1] is so obviously a complete *750 coverage of the subject that any attempt to change its clear import, that leased bars should be subject to no closed season, would clearly be contrary to the legislative intent in enacting the statute.
"If the language of Section 370.16 (15) is not sufficiently clear on this subject other provisions of the chapter clearly tend to the same conclusion. In Section 370.03(2) we find this language:
"`The state board of conservation has exclusive power and control over all water bottoms, not held under some grant or alienation heretofore made, including such as may revert to the state by cancellation or otherwise, * * *' (Emphasis supplied.)
"Section 370.16(16) prohibits the use of dredges for taking oysters from `natural or artificial state reefs' but provides that `Lessees of bedding grounds shall have the right to use in such bedding grounds any implements, or appliances that they may desire.'
"Section 370.16(17) regulates harvesting methods employed on natural reefs but does not apply to leased beds.
"Of particular significance is Section 370.16(13) which provides:
"`The board shall improve, enlarge and protect the natural oyster and clam reefs of this state to the extent it may deem advisable and the means at its disposal will permit. Said board shall also, to the same extent, assist in protecting the leased or granted reefs in the hands of lessees or grantees from the state. Said board shall also make a detailed report, to the legislature at each session, of its efforts in relation to the oyster and clam business, together with recommendations for their development and the proper protection of the rights of the state and private holders therein.' (Emphasis supplied.)
"It is impossible for this court to reconcile these provisions of the statute with the idea that the legislature intended to regulate the season, methods of taking and size of oysters taken from natural bars and reefs and intended by this statute to grant to the Board of Conservation the power to regulate the taking of oysters from privately leased and cultivated bars.
"The court having reached the conclusion that the statutes do not confer upon the Board of Conservation the power to fix a closed season on the taking of oysters from privately owned leased beds, it necessarily follows that Rule No. 12 above quoted is ultra vires the Board and should not be enforced."
The final decree is therefore affirmed as to the result based on the above conclusions.
The trial court, at the request of all parties, who were desirous of securing a final determination of the rights of the plaintiff-lessees with respect to the power of the State to impose a closed season upon the taking of cultivated oysters from leased beds, by the final decree undertook to answer the following question:
May the state constitutionally fix and enforce a closed season upon the taking of cultivated oysters from leased bottoms of public waters corresponding to the closed *751 season during which oysters may not be taken from public or natural bars?
Such was not necessary or proper to a determination of the issue in the trial court, nor is it necessary or proper to a determination of this appeal.
We know of no precedent or authority to support that part of the judgment and opinion of the trial court which purports to determine in advance the constitutionality of a possible future act of the Legislature which might fix and provide for the enforcement of a closed season upon the taking cultivated oysters from leased bottoms of public waters corresponding to the closed season during which oysters may not be taken from public or natural bars. The fact that "all of the parties" were desirous of securing a final determination of such question and requested the trial court to answer it does not and cannot confer jurisdiction to do so.
No court in this state has the power to determine in advance of its enactment the validity or constitutionality of any act of the Legislature. Any attempt to do so would be a clear invasion by the judiciary of the legislative branch of the government. If, as was attempted to be done here, the trial court and this court could lawfully determine in advance that a hypothetical act of the Legislature is constitutional, such courts could, by the same reasoning, declare any such proposed act unconstitutional, thereby effectually preventing the exercise by the Legislature of its law making authority. Elemental principles dispel the notion that our courts have any such power.
Moreover, if under any theory these proceedings on this point may be considered as a declaratory judgment action, the essential requirement of a bona fide dispute between the contending parties as to a present justiciable question is absent. Local No. 234, etc. v. Henley & Beckwith, Inc., Fla., 66 So.2d 818.
Courts do not have the power to give legal advice or opinions. "The relief sought should not merely be legal advice by the courts or to give an answer to satisfy curiosity." Bryant v. Gray, Fla., 70 So.2d 581, 584. "It was not the intent of the declaratory judgment statute to confer jurisdiction on the courts to be legal advisers of all the political subdivisions of the State and to approve all contemplated contracts which such political subdivisions believe to be legal and about which there may be some doubt." Brautigam v. MacVicar, Fla., 73 So.2d 863, 866. Under the Constitution, only the Supreme Court Justices (not the court itself) may be required, by the Governor, to give their individual opinions on questions concerning the interpretation of the Constitution, and there such answer is specifically limited to such questions as affect the Governor's power and duties. Sec. 13, Art. IV, Florida Constitution, F.S.A. Such opinions do not have the force of legal precedent and are not binding on the Court itself.
In every instance where an attempt has been made by the courts to exercise such a non-existent power, the Supreme Court has held it to be a nullity. Brautigam v. MacVicar, Fla., 73 So.2d 863; State v. Lewis, Fla., 72 So.2d 823; North Shore Bank v. Town of Surfside, Fla., 72 So.2d 659; Bryant v. Gray, Fla., 70 So.2d 581; Ervin v. Taylor, Fla., 66 So.2d 816. We conclude, therefore, that so much of the opinion and judgment of the trial judge as undertakes to adjudicate the constitutional power of the state under the within stated question is a nullity.
Affirmed in part and reversed in part.
CARROLL, DONALD, J., and DREW, E. HARRIS, Associate Judge, concur.
NOTES
[1] Section 370.16(15) Closed season for oysters; rules of evidence; proviso  No person may take, gather or catch oysters on the natural reefs of this state, or have such oysters in his possession, for sale between the 1st day of May and the 1st day of September of each year, except from private leased or granted grounds, or artificial beds of riparian owners, except as otherwise provided in this section; and the possession of oysters during said closed season shall be prima facie a violation of this section, and the burden shall be on the possessor of such oysters to prove that they were fished or gathered beyond the jurisdiction of the state or from private oyster beds. The board shall, however, have authority to permit the fishing of unculled oysters from the natural oyster reefs as herein provided, from the first day of April until the first day of October, but only for bedding purposes, and then only under such rules and regulations as said board may adopt to carry out the provisions of law.