WISE, Judge.
The appellant, George Carroll Cole, was convicted of one count of first-degree sexual abuse, a violation of § 13A-6-66, Ala. Code 1975. He was sentenced to 10 years’ imprisonment. However, pursuant to the Split Sentence Act, § 15-18-8, Ala.Code 1975, Cole’s sentence was suspended and he was ordered to serve 18 months in prison, followed by 5 years of supervised probation. He was also ordered to pay a $100 assessment to the crime victims compensation fund, restitution and all court costs.
On appeal, Cole argues that the trial court erred when it overruled his motion for a mistrial. Specifically, Cole contends that the court should have declared a mistrial upon learning that one of the jurors deliberating the question of his guilt was not mentally competent to serve on a jury.
Section 12 — 16—60(a), Ala.Code 1975, states, in pertinent part:
“(a) A prospective juror is qualified to serve on a jury if the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character and sound judgment and also:
“(1) Is a citizen of the United States, has been a resident of the county for more than 12 months and is over the age of 19 years;
“(2) Is able to read, speak, understand and follow instructions given by a judge in the English language;
“(3) Is capable by reason of physical and mental ability to render satisfactory jury service, and is not afflicted with any permanent disease or physical weakness whereby the juror is unfit to discharge the duties of a juror;
“(4) Has not lost the right to vote by conviction for any offense involving moral turpitude.”
In Chrysler Credit Corp. v. McKinney, 456 So.2d 1069, 1071 (Ala.1984), the Alabama Supreme Court held that “a new trial is mandated where a juror serves who has failed to respond to a specific question based upon a statutory disqualification.” However, a juror’s failure to meet the statutory qualifications may be waived. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 426 (Ala.1997)(defendant waived right to mount posttrial challenge to qualifications of juror when defendant failed to follow up on trial court’s general inquiry as to whether jurors met statutory qualifications).
An examination of the record reveals that while the trial court questioned the prospective jurors regarding their qualifications as to § 12-16-60(a)(l) and (4), the court did not inquire whether the jurors met the statutory qualifications set out in § 12 — 16—60(a)(2) and (3). (R. 7.) However, this exchange also indicates that previous questioning of the jurors regarding these statutory qualifications had occurred. Moreover, during the hearing on Cole’s motion for a new trial the trial court indicated that the jurors had, in fact, been asked whether any of them were incapable by reason of physical and mental ability to render satisfactory jury service. (New-trial hearing, R. 6.)
The first indication of a potential problem regarding one of the juror’s mental ability to serve arose during jury deliberations. On October 22, 2003, after both sides had rested and the trial court had instructed the jury on the applicable law, the jury retired to deliberate. The jury continued its deliberations for the balance of the day and returned the following day to continue deliberations. On the afternoon of October 23, 2003, the jury advised *853 the court that it was unable to reach a verdict. The court advised the jury that it should try and reach a verdict, and the jury retired to resume deliberations. Later that afternoon, the jury sent a note to the trial court, apparently asking for additional instructions — specifically, asking the court to “simplify” its earlier charge. The court then recharged the jury, attempting to explain the applicable law in somewhat simpler terms. After the jury retired to resume deliberations, the following occurred:
“MS. WELDON [defense counsel]: Judge, we would make an objection on the record to further charging the jury when the jury — 11 members of the jury have indicated that they feel that one member of the jury does not have the mental capacity to make a decision in this, and she doesn’t understand the issues of what is to be decided in this case. It’s the best interest of my client that he has a jury of 12 to make the decision and render a verdict in this case, and we don’t feel like there’s a competent jury of 12 in this back room to make this decision.
“THE COURT: And for the record, let me read exactly what the note was that the jury wrote. The note they sent out was, ‘If she does not understand, should we tell the judge?’ Then written underneath it is, T think she does not have the mental capacity to make such decisions.’
“Now, first of all, I don’t know — I’m not going to inquire into the mental capacity of a juror, and I don’t know how capable, whoever the author of that note is, of making that determination. And I don’t know if the woman has any type of mental — I say woman, because the note says ‘she,’ has any type of mental problems. So I’m going to overrule your [objection].
“MS. WELDON: Judge, because I forgot to ... say this, I would make an immediate motion for a mistrial based on the question of the jury.
“THE COURT: I overrule.
“MS. WELDON: Thank you.
“THE COURT: And let me go a little bit further, if I can find this court file. I think that in talking, we have all thought that the person, the juror that they are talking about is [C.P.] .,; is that correct?
“MR. NEILL [prosecutor]: • Yes, ma’am.
“THE COURT: Ms. Weldon, is that your — from what the bailiff has told us?
“MS. WELDON: Well, Judge, that’s what I thought until I went in there. And if it’s the person in the corner, I’m not sure that’s [her].
“THE COURT: Which person in the corner are you talking about?
“MS. WELDON: I was talking about the one in the yellow that was sitting in the corner.
“MR. NEILL: Well, you know, I’m not sure.
“THE COURT: I think it was the woman at the table on the end who had her purse on the floor by her, and that woman is [C.P.], who gave no indication during voir dire that she had any problems. She answered the questions. I have a couple of notes down here that she made responses to. And she gave no indication during voir dire that she had any type of problems that would keep her from being a juror. All right.
“MS. WELDON: We take exception.”
(R. 275-78.) At some point later that afternoon, the jury returned a verdict finding Cole guilty of first-degree sexual abuse. The record indicates that the jury was polled and was then excused. (R. *854 279.) Cole was sentenced on December 19, 2003.
On January 20, 2004, Cole filed an unverified motion for a new trial[1] in which he alleged that he was entitled to a new trial on the ground that the trial court should have declared a mistrial after learning that C.P., a juror who served on the jury that convicted him, did not meet the statutory qualifications for service because, he alleged, she suffered from a mental defect. Cole alleged that C.P. had failed to respond to the court’s initial inquiry during voir dire regarding whether each potential juror met the statutory qualifications for jury service, and that C.P.’s mental disability did not become apparent until after the jury had retired to deliberate. The new-trial motion contained numerous allegations of fact regarding the circumstances surrounding the events of October 23, 2003, and the jury’s inability to reach a verdict and the trial court’s recharging of the jury. Although none of these factual allegations were included in the trial transcript, the allegations were not refuted by the State. Additionally, Cole requested a hearing on his motion for a new trial and indicated that a number of witnesses would be subpoenaed to testify regarding C.P.’s mental competency and fitness to serve, including court personnel, C.P.’s supervisor at her place of employment, and the remaining members of the jury, who observed C.P.’s behavior during deliberations.
On February 17, 2004, a hearing on Cole’s motion for a new trial was conducted. The prosecutor moved to quash the subpoenas issued to the jurors on the ground that requiring the jurors to testify about what had occurred during deliberations was improper. After hearing argument from both sides and upon learning that another subpoenaed witness — C.P.’s supervisor at work — had failed to appear, the court granted the motion to quash. The only evidence defense counsel was permitted to offer in support of the motion for a new trial was the note sent out during jury deliberations on October 23, 2003. The trial court denied Cole’s motion for a new trial.
“A mistrial is a drastic remedy that should be used sparingly and only to prevent manifest injustice.” Hammonds v. State, 111 So.2d 750, 767 (Ala.Crim.App.1999) (citing Ex parte Thomas, 625 So.2d 1156 (Ala.1993)), aff'd, 777 So.2d 777 (Ala.2000). A mistrial is the appropriate remedy when a fundamental error in a trial vitiates its result. Levett v. State, 593 So.2d 130, 135 (Ala.Crim.App.1991). “ ‘The granting of a mistrial is addressed to the broad discretion of the trial judge, and his ruling will not be revised on appeal unless it clearly appears that such discretion has been abused.’ ” Grimsley v. State, 678 So.2d 1197, 1206 (Ala.Crim.App.1996) (quoting Free v. State, 495 So.2d 1147, 1157 (Ala.Crim.App.1986)).
The Alabama Supreme Court has held that the requirements of the statute governing juror qualifications, i.e., § 12-16-60, Ala.Code 1975, are mandatory and their application is not within the trial court’s discretion. McBride v. Sheppard, 624 So.2d 1069, 1071-72 (Ala.1993). Likewise, that Court has held that a juror’s failure to meet the statutory qualifications set out in § 12-16-60(a) established a manifest necessity for a mistrial. See Ex parte McKinney, 567 So.2d 877 (Ala.1990). Because Cole did not learn that some question existed regarding C.P.’s fitness to *855 serve on his jury until after jury deliberations began, his motion for a mistrial, made upon learning of the note sent out of the jury room, was timely.
Cole’s allegation that one of the jurors who served on his jury was mentally unfit to serve is troubling. However, because Cole was denied the opportunity to present evidence in support of his claim that C.P. did, in fact, fail to meet the statutory qualifications set out in § 12—16—60(a), there is no record for this Court to review in order to determine whether Cole’s claim that the trial court abused its discretion in denying the motion for a mistrial is meritorious.[2] Contrary to the trial court’s conclusions, this is not a situation where—had they been allowed to testify—the jurors would have been asked to disclose information concerning the deliberative process. Rather, this case involves a determination whether C.P. met the statutory qualifications of § 12-16-60(a) and was mentally capable of serving on a jury. Thus, the remaining jurors’ testimony regarding C.P.’s demeanor during deliberations was critical to the resolution of this issue. Accordingly, the trial court should not have quashed the subpoenas directed to the remaining jurors and, further, should have given defense counsel the opportunity to secure the attendance of all necessary witnesses. Only then could this Court determine whether the trial court abused its discretion in denying the motion for a mistrial. See Long v. State, 621 So.2d 383, 385-87 (Ala.Crim.App.1993).
Based on the foregoing, we remand this ease for the circuit court to make specific, written findings of fact as to the claim Cole raised in his motion for a new trial. On remand, the circuit court may require the State to respond to the motion and should conduct a hearing on the motion. If the circuit court determines that Cole is entitled to relief on his claim, then the court may grant such relief as it deems appropriate.
The circuit court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 56 days of the release of this opinion. The return to remand shall include any response filed by the State, a transcript of the proceedings on remand, and the circuit court’s specific written findings of fact.
REMANDED WITH DIRECTIONS. 
McMILLAN, P.J., concurs; BASCHAB and SHAW, JJ., concur in the result; COBB, J., dissents, with opinion.

. Because the last day for filing this motion was Sunday January 18, and because Monday January 19 was a state and federal holiday, Cole's motion was timely filed. See Rule 1.3(a), Ala.R.Crim.P.

. We recognize that Cole’s motion for a new trial was unverified. However, in Ex parte Jefferson, 749 So.2d 406 (Ala.1999), our Supreme Court noted:
"In Similton v. State, [672 So.2d 1363 (Ala.Crim.App.1995)], the Court of Criminal Appeals held that assertions in an unverified motion are bare allegations and cannot be considered as evidence or proof of the facts alleged. However, in Hill v. State, 675 So.2d 484 (Ala.Crim.App.1995), the Court of Criminal Appeals modified its holding in Similton and reversed the trial court’s denial of a motion for new trial and remanded the case to the trial court because the allegations of ineffective assistance of counsel were supported by facts contained in the record on appeal. Supporting affidavits or other extrinsic evidence is not necessary where the grounds relied on in the motion for a new trial are shown by the record of the proceedings. Hill v. State, 675 So.2d 484 (Ala.Crim.App.1995).”
749 So.2d at 408. Although the procedural posture of this case is not identical to that in Jefferson, we believe that .the legal principle stated in Jefferson is applicable here. The court should have allowed Cole the opportunity to present evidence in support of his claim.